JOHN M. WALKER, Jr., Chief Judge.
 

 Section 106 of the Bankruptcy Code purports to abrogate state sovereign immunity under certain circumstances in the bankruptcy context,
 
 see
 
 11 U.S.C. § 106(a), and, in the absence of abrogation, to define circumstances under which a state will be deemed to have waived its immunity,
 
 see
 
 11 U.S.C. §§ 106(b) and (c). In this case, we must decide whether a state agency’s assertion of sovereign immunity precludes the adjudication under § 106(c) of a claim asserted by a bankruptcy trustee against that agency to offset recovery by another agency of the same state against the bankrupt estate.
 

 BACKGROUND
 

 For several years prior to 1991, Charter Oak Associates, Inc. (“Charter Oak”) operated leased residential facilities for state-supported individuals with mental disabilities. On or about June 30, 1991, the company ceased its operations and, in December of that year, filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Connecticut (Robert L. Kre-chevsky,
 
 Bankruptcy
 
 Judge). On March 27, 1992, the Connecticut Department of Revenue Services (“DRS”) filed a proof of claim against Charter Oak’s estate for unpaid use taxes in the amount of $148,643.34.
 

 After an audit conducted in 1992 and 1993, defendant-appellant Connecticut Department of Social Services (“DSS”) determined that it owed Charter Oak $225,309.29 in rental reimbursements. Plaintiff-appellee Neil Ossen, the bankruptcy trustee, then commenced an adversary proceeding against DSS in the bankruptcy court, seeking the amount of the withheld reimbursements either by an or
 
 *764
 
 der of turnover pursuant to 11 U.S.C. § 542(b) or through a judgment. DSS moved to dismiss the complaint for lack of subject matter jurisdiction on the basis that, even though DRS had filed a proof of claim, the trustee’s suit was barred by the Eleventh Amendment.
 
 [1]
 

 The bankruptcy court denied the motion to dismiss. It agreed with DSS that § 106(a) was unconstitutional because Congress did not have the power to abrogate sovereign immunity in the bankruptcy context, and that the claim against DSS did not fall within the ambit of § 106(b). However, the bankruptcy court concluded that the trustee’s claim could proceed under § 106(c).
 
 See Ossen v. Connecticut (In re Charter Oak Assocs.),
 
 203 B.R. 17, 24 (Bankr.D.Conn.1996). DSS filed an interlocutory appeal in the United States District Court for the District of Connecticut (Alvin W. Thompson, Judge),
 
 see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,
 
 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (denial of sovereign immunity is immediately appealable under collateral order doctrine), and the district court affirmed. Reviewing the district court’s decision on this pure question of law
 
 de novo, see In re Bell,
 
 225 F.3d 203, 209 (2d Cir.2000), we now affirm.
 

 DISCUSSION
 

 Section 106 of the Bankruptcy Code reads in pertinent part as follows:
 

 (a)Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [several enumerated bankruptcy provisions including 11 U.S.C. § 542] ....
 

 (b) A governmental unit that has filed a proof of claim in [a bankruptcy] case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
 

 (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
 

 11 U.S.C. § 106.
 

 The narrow issue before us is whether the district court erred in holding that the trustee could, consistent with the Eleventh Amendment and the language of § 106(c), assert Charter Oak’s claim against DSS to offset the state of Connecticut’s tax claim against the bankrupt estate. We need not (and do not) decide whether § 106(a) constitutes a valid abrogation of state sovereign immunity (a question currently pending before the Supreme Court,
 
 see Tenn. Student Assistance Corp. v. Hood,
 
 — U.S. -, 124 S.Ct. 45, 156 L.Ed.2d 703 (2003) (Mem) (granting certiorari)) or whether the trustee’s claim meets the requirements of § 106(b).
 
 [2]
 
 However, some discussion of Eleventh Amendment immunity generally and of § 106(a) in particular is necessary
 
 *765
 
 to understand how, and in what circumstances, § 106(c) applies.
 

 I. The Eleventh Amendment, Abrogation, and § 106(a)
 

 The Eleventh Amendment provides:
 

 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 

 U.S. Const, amend. XI. “Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts,” it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court.
 
 Seminole Tribe of Fla. v. Florida,
 
 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996);
 
 see Fla. Dep’t of State v. Treasure Salvors, Inc.,
 
 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (sovereign immunity extends to state agencies). The doctrine of state sovereign immunity is the product of two principles underlying our constitutional framework: “first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.”
 
 Seminole Tribe,
 
 517 U.S. at 54, 116 S.Ct. 1114 (internal quotation marks and punctuation omitted). State sovereign immunity is not just a “personal privilege” of the state,
 
 see Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
 
 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), but also a jurisdictional limitation on the power of federal courts. The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution.
 
 See Seminole Tribe,
 
 517 U.S. at 54, 116 S.Ct. 1114.
 

 State sovereign immunity is not absolute, however. It is subject to two qualifications. First, Congress can abrogate a state’s immunity if it unequivocally expresses its intent to do so and acts “pursuant to a valid exercise of power.”
 
 See id.
 
 at 55, 116 S.Ct. 1114 (internal quotation marks omitted). Second, a state can waive its immunity from suit.
 
 See, e.g., Lapides v. Bd. of Regents of the Univ. Sys.,
 
 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002);
 
 Coll. Sav. Bank,
 
 527 U.S. at 675, 119 S.Ct. 2219.
 

 Section 106(a) of the Code undertakes to effectuate the first kind of limitation; it purports to abrogate a state’s immunity to certain bankruptcy suits.
 
 See
 
 11 U.S.C. § 106(a). Most of our sister circuits, however, have concluded that this abrogation is constitutionally infirm.
 
 See, e.g., Nelson v. La Crosse County Dist. Attorney,
 
 301 F.3d 820, 832 (7th Cir.2002);
 
 Mitchell v. Franchise Tax Bd. (In re Mitchell),
 
 209 F.3d 1111, 1121 (9th Cir.2000);
 
 Sacred Heart Hosp. v. Pennsylvania (In re Sacred Heart Hosp.),
 
 133 F.3d 237, 245 (3d Cir.1998);
 
 Dep’t of Trans. & Dev. v. PNL Asset Mgmt. Co. (In re Estate of Fernandez),
 
 130 F.3d 1138, 1139 (5th Cir.1997) (per curiam)
 
 (“Fernandez II
 
 ”),
 
 amending
 
 123 F.3d 241 (5th Cir.1997)
 
 (“Fernandez I
 
 ”);
 
 Schlossberg v. Maryland (In re Creative Goldsmiths),
 
 119 F.3d 1140, 1145 (4th Cir.1997).
 
 But see Hood v. Tenn. Student Assistance Corp. (In re Hood),
 
 319 F.3d 755, 767-68 (6th Cir.) (holding that § 106(a) is constitutional),
 
 cert. granted, Tenn. Student Assistance Corp. v. Hood,
 
 — U.S. -, 124 S.Ct. 45, 156 L.Ed.2d 703 (2003) (Mem). These rulings are generally to the effect that § 106(a) fails the second prong of the abrogation test; although Congress obviously intended to abrogate state sovereign immunity when it enacted § 106(a), these circuits have held that it did not act pursuant to a “valid exercise of power” in carrying out that
 
 *766
 
 intent. Section 106(a) is an exercise of Congress’s powers under the Bankruptcy Clause of Article I of the Constitution.
 
 See Mitchell,
 
 209 F.3d at 1119;
 
 Sacred Heart Hosp.,
 
 133 F.3d at 244-45;
 
 Fernandez I,
 
 123 F.3d at 245;
 
 Schlossberg,
 
 119 F.3d at 1146-47. Although the Supreme Court has yet to address squarely whether the Bankruptcy Clause provides a legitimate basis for abrogation,
 
 cf. Tenn. Student Assistance Corp.,
 
 — U.S. -, 124 S.Ct. 45, 156 L.Ed.2d 703, the Court’s precedents have uniformly rejected attempts to abrogate pursuant to other Article I powers.
 
 See Fed. Mar. Comm’n v. S.C. State Ports Auth.,
 
 535 U.S. 743, 749-50, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) (“Congress, pursuant to its Article I powers, cannot abrogate state sovereign immunity ....”);
 
 Bd. of Trustees v. Garrett,
 
 531 U.S. 356, 364, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (“Congress may not, of course, base its abrogation of the States’ Eleventh Amendment immunity upon the powers enumerated in Article I.”);
 
 Kimel v. Fla. Bd. of Regents,
 
 528 U.S. 62, 78, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (“Congress lacks power under Article I to abrogate the States’ sovereign immunity.”);
 
 Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank,
 
 527 U.S. 627, 636, 119 S.Ct. 2199,144 L.Ed.2d 575 (1999) (holding that Congress could not abrogate state sovereign immunity pursuant to the Patent Clause of Article I);
 
 Seminole Tribe,
 
 517 U.S. at 65, 72, 116 S.Ct. 1114 (holding that Fourteenth Amendment is the only recognized source of authority for abrogation). In other words, there is some doubt about whether the Bankruptcy Clause, pursuant to which Congress enacted § 106(a), gives Congress any power to abrogate state sovereign immunity.
 

 Our analysis does not turn, ultimately, on whether § 106(a) passes constitutional muster, and we do not decide that issue. However, the doubts courts have raised about § 106(a)’s constitutionality spill over into the question of whether § 106(c) provides a valid basis for the trustee’s suit against DSS. As explained below, if Congress does not have the power to abrogate state sovereign immunity pursuant to its powers under the Bankruptcy Clause, then presumably it also lacks power to enact a bankruptcy provision that defines a waiver of immunity that is broader in scope than would be permitted under the Eleventh Amendment.
 

 II. Waiver and § 106(c)
 

 In addition to abrogating state sovereign immunity in some circumstances, § 106 stipulates other circumstances in which a state will be deemed to have waived its immunity to certain types of claims as a result of its conduct in litigation.
 
 See
 
 11 U.S.C. §§ 106(b) & (c). Under Congress’s scheme, when a state files a proof of claim in a bankruptcy case, it waives its immunity with respect to: (1) claims of the debtor’s estate “that arose out of the same transaction or occurrence out of which” the state’s proof of claim arose, 11 U.S.C. § 106(b); and (2) claims of the debtor’s estate that did not arise out of the same transaction or occurrence, to the extent that they offset the state’s claim, 11 U.S.C. § 106(c).
 

 DSS argues that § 106(c) extends the scope of a state’s waiver too far because, under the Eleventh Amendment, a state’s filing of a proof of claim can be construed
 
 at most
 
 as a waiver of immunity with respect to claims that arose out of the same transaction or occurrence as the state’s proof of claim. Therefore, in DSS’s view, § 106(c) is unconstitutional. DSS also argues that, even if it passes constitutional muster, § 106(c) does not apply to this case. We consider each argument in turn.
 

 
 *767
 
 a. Constitutionality of § 106(c)
 

 Because the doctrine of waiver (as it pertains to state sovereign immunity) is rooted in and determined by the Eleventh Amendment itself, it cannot be extended by Congress.
 
 See, e.g., Coll. Sav. Bank,
 
 527 U.S. at 679-80, 119 S.Ct. 2219. Accordingly, § 106(c) is valid only if (1) it provides for (or “deems”) a waiver of sovereign immunity in circumstances where the Eleventh Amendment would permit an inference of waiver, and (2) the scope of the waiver it describes comports with constitutional limitations. If § 106(c) expands either the circumstances or the scope of a state’s waiver beyond what would be permitted by the Eleventh Amendment, it is an abrogation of state sovereign immunity and may, therefore, be constitutionally suspect — for the same reasons that § 106(a) may be constitutionally suspect.
 

 The Fourth Circuit has suggested that Congress has no power to deem a waiver at all because that would be tantamount to abrogation.
 
 See Schlossberg,
 
 119 F.3d at 1147 (“While 11 U.S.C. § 106(b) may correctly describe those actions that, as a matter of constitutional law, constitute a state’s waiver of the Eleventh Amendment, it is nevertheless not within Congress’ power to abrogate such immunity by ‘deeming’ a waiver.”). We disagree. If the “deemed” waiver is just a codification of constitutional waiver principles, it does not abrogate Eleventh Amendment immunity and is, therefore, constitutionally permissible.
 

 In seeking to delineate the Eleventh Amendment boundaries of waiver, the Supreme Court has held that a state waives its immunity “either if [it] voluntarily invokes [a federal court’s] jurisdiction, or else if [it] makes a ‘clear declaration’ that it intends to submit itself to [a federal court’s] jurisdiction.”
 
 Coll. Sav. Bank,
 
 527 U.S. at 675-76, 119 S.Ct. 2219 (internal citation omitted). Because application of § 106(c) to a particular case does not turn on the state’s declared intent, but rather on the state’s conduct, the section can only be constitutionally valid if it is a proper codification of the rule that voluntary invocation of a court’s jurisdiction amounts to a waiver of sovereign immunity-
 

 A state is deemed to have invoked the court’s jurisdiction when it has made a “voluntary appearance in federal court.”
 
 Lapides,
 
 535 U.S. at 619, 122 S.Ct. 1640;
 
 Gunter, v. Atl. Coast Line R.R.,.
 
 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906) (“[Wlhere a State voluntarily be-, come[s] a party to a cause, and submits its rights for judicial determination,.# will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the [Eleventh] Amendment.”). The doctrine of waiver by litigation, which derives directly from the Eleventh Amendment, is founded “not upon a State’s actual preference or desire,” but rather upon “the judicial need. to avoid inconsistency, anomaly, and unfairness.”
 
 Lapides,
 
 535 U.S. at 620, 122 S.Ct. 1640;
 
 see generally
 
 Jonathan R. Siegel,
 
 Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment,
 
 52 Duke L.J. 1167 (2003) [hereinafter Siegel,
 
 Waivers
 
 ].
 

 One practical application of the waiver-by-litigation doctrine is the longstanding rule that a state waives its sovereign immunity by filing a proof of claim in a bankruptcy case.
 
 See Gardner v. New Jersey,
 
 329 U.S. 565, 573-74, 67 S.Ct. 467, 91 L.Ed. 504 (1947);
 
 see also Coll. Sav. Bank,
 
 527 U.S. at 681 n. 3, 119 S.Ct. 2219 (re-affirming Gardner);
 
 Lapides,
 
 535 U.S. at 619, 122 S.Ct. 1640 (same). .In
 
 Gardner,
 
 the state of New Jersey filed a proof of claim for unpaid taxes and interest in the amount of approximately $20 million against the debtor’s estate. 329 U.S: at
 
 *768
 
 570, 67 S.Ct. 467. The trustee and the debtor responded by filing objections to the claim, arguing,
 
 inter alia,
 
 that New Jersey’s rights to the property of the estate were governed by a settlement agreement that had been accepted by the state legislature.
 
 Id.
 
 The trustee then brought a petition asking the court to consider the trustee’s objections in adjudicating the state’s claim, to which the Attorney General responded with an assertion of sovereign immunity.
 
 Id.
 
 at 571, 67 S.Ct. 467. The Supreme Court held that the bankruptcy court had subject matter jurisdiction to consider the trustee’s objections and adjudicate the claim accordingly.
 
 Id.
 
 at 573, 67 S.Ct. 467. It reasoned that “[wjhen the State becomes the actor and files a claim against the [debtor’s estate] it waives any immunity which it otherwise might have had respecting the adjudication of the claim.”
 
 Id.
 
 at 574, 67 S.Ct. 467.
 

 Applying
 
 Gardner
 
 to this case, it is indisputable that the state of Connecticut waived its sovereign immunity when its agency, DRS, filed a proof of claim against Charter Oak’s estate.
 
 [3]
 
 But that does not end the inquiry because
 
 Gardner
 
 does not define the scope of the waiver that is effected by a state’s filing of a proof of claim. Unanswered by
 
 Gardner
 
 is whether such a fifing waives immunity with respect to all claims against the state, whether it waives immunity with respect to only some claims and not others, or whether it just prevents the state from asserting its immunity in response to objections lodged against its claim (as in
 
 Gardner
 
 itself).
 

 The Supreme Court has never had the occasion to address these questions left open by
 
 Gardner.
 
 Most circuits agree, however, that when a state files a proof of claim, it waives its immunity as to at least some counterclaims, specifically compulsory counterclaims.
 
 See, e.g., Arecibo Cmty. Health Care, Inc. v. Puerto Rico,
 
 270 F.3d 17, 28 (1st Cir.2001) (holding that the Eleventh Amendment permits assertion of compulsory counterclaims by debtor against state where state has filed a proof of claim);
 
 Schulman v. California (In re Lazar),
 
 237 F.3d 967, 978 (9th Cir.2001) (same);
 
 Wyoming Dep’t of Trans. v. Straight (In re Straight),
 
 143 F.3d 1387, 1391 (10th Cir.1998) (same);
 
 Schlossberg,
 
 119 F.3d at 1148 (same).
 
 Cf. Jones v. Yorke (In re Friendship Med. Ctr., Ltd.),
 
 710 F.2d 1297, 1301 (7th Cir.1983) (suggesting that, under the Eleventh Amendment, waiyer by litigation in bankruptcy case extends only to compulsory counterclaims that are capped by a setoff limitation). ■ Compulsory counterclaims are those that arise out of “the same transaction or occurrence” as the subject matter of the suit, Fed.R.Civ.P. 13(a), and they are the very claims permitted by § 106(b).
 
 See United States v. Nordic Vill., Inc.,
 
 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (noting in dicta that the predecessor to § 106(b) waives the sovereign immunity of the United States with respect to “compulsory counterclaims to governmental claims”).
 

 These rulings, however, do not address the different question of whether the Eleventh Amendment permits courts to construe a state’s proof of claim as a waiver of its immunity with respect to permissive counterclaims that are capped by a setoff limitation, as provided in § 106(c).
 
 See id.
 
 (noting in
 
 dicta
 
 that the predecessor to § 106(c) waives the sovereign immunity of the United States with respect to “permissive counterclaims to governmental claims capped by a setoff limitation”). Although the question has' received relatively scant judicial attention, principles derived from Eleventh Amend
 
 *769
 
 ment jurisprudence support the proposition that the scope of a state’s waiver by litigation should extend to such claims.
 

 First, and most important, the fairness and consistency concerns that undergird the waiver-by-litigation doctrine favor an approach that would allow a debtor to assert a claim that would reduce or eliminate its indebtedness to the state:
 

 [A]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment’s presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State’s actual preference or desire,' which might, after all, favor selective use of “immunity” to achieve litigation advantages.
 

 Lapides,
 
 535 U.S. at 620, 122 S.Ct. 1640. From an equitable standpoint, we can see no reason why a state that has filed a proof of claim in a bankruptcy case should be permitted to raise the immunity shield in response to permissive counterclaims brought by the debtor, at least where those counterclaims are capped by a setoff limitation, as they are under § 106(c).
 
 [4]
 
 The setoff limitation protects the state’s coffers because the state will never be liable to pay anything. The best success the trustee can achieve under § 106(c) is to reduce to zero the debt the estate owes to Connecticut. A contrary rule, on the other hand, would allow states that are creditors to reap benefits from filing proofs of claim in bankruptcy actions while permitting them to withhold the debts they owe to the estate, giving them a distinct and unfair advantage over other (non-state) creditors.
 

 In effect, all that § 106(c) permits is the assertion by the trustee that the state’s claim has already been paid, or partially paid. While it may well be contrary to the doctrine of state sovereign immunity to allow a debtor to assert permissive counterclaims that might result in an affirmative recovery from the state, when the state asserts a claim in federal court, its immunity does not protect against the assertion of counterclaims to the extent they would reduce or defeat the state’s claim.
 

 Second, once a state has voluntarily submitted itself to the court’s jurisdiction by filing a proof of claim with a view to reaping -financial benefit, there is no longer any danger that the state will be subjected to the “indignity” of being haled into court— which is the primary concern of the Eleventh Amendment.
 
 See Fed. Mar. Comm’n,
 
 535 U.S. at 760, 122 S.Ct. 1864 (“The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities.”). These two considerations persuade us that the Eleventh Amendment permits the assertion by a debtor of permissive counterclaims that are capped by a setoff limitation against a state that has filed a proof of claim. Because this is the scope of the waiver set forth in § 106(c), we conclude that the provision passes constitutional muster.
 

 We note that the only other circuit to have considered this issue has arrived at the opposite conclusion. Relying on Su
 
 *770
 
 preme Court precedent establishing that waivers of sovereign immunity are to be “narrowly construed,” the Fourth Circuit has held that the Eleventh Amendment permits only
 
 compulsory
 
 counterclaims to be asserted against the state in these circumstances.
 
 See Scklossberg,
 
 119 F.3d at 1147-48. We are not convinced by the Fourth Circuit’s reasoning. First, the waiver-by-litigation doctrine is driven not by the state’s “actual preference or desire,” which might weigh in favor of construing a waiver narrowly, but rather by the “need to avoid inconsistency, anomaly, and unfairness,” which requires a general assessment of the equities associated with the state’s participation in the bankruptcy litigation.
 
 Lapides,
 
 535 U.S. at 620, 122 S.Ct. 1640. As discussed above, the balance of these equities favors a construction of the Eleventh Amendment that would permit a debtor to assert a permissive counterclaim capped by a setoff limitation against a state that has filed a proof of claim.
 

 Second, the Supreme Court developed the “narrow construction” rule as a means of interpreting a state’s “unequivocal expression” of waiver in state statutes, state constitutions, and the like.
 
 Nordic Vill.,
 
 503 U.S. at 34, 112 S.Ct. 1011 (holding that a government’s “consent to be sued must be construed strictly in favor of the sovereign”) (internal quotation marks omitted);
 
 see, e.g., Port Auth. Trans-Hudson Corp. v. Feeney,
 
 495 U.S. 299, 306, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (construing state statutory consent-to-suit provisions);
 
 Atascadero State Hosp. v. Scanlon,
 
 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (construing provision of state constitution). Because the “narrow construction” principle is a tool for construing a state’s express waivers of immunity, it has little relevance in this context, where the waiver is effected not through the language a state has used, but through the actions it has taken during the course of litigation.
 
 See Lapides,
 
 .535 U.S. at 620, 122 S.Ct. 1640 (recognizing distinction between two types- of waiver);
 
 see also
 
 Sie-gel,
 
 Waivers,
 
 52 Duke L.J. at 1187 (characterizing express waivers as “consents to suit” and conduct waivers as waivers “without consent”).
 

 In sum, we decline to adopt the Fourth Circuit’s reasoning and hold that § 106(c) is a permissible codification of the waiver-by-litigation doctrine.
 

 b. Application of § 106(c)
 

 DSS argues that even if § 106(c) is constitutional, it does not apply to this case. The agency insists that any waiver effected by DRS cannot be ascribed to DSS, which (DSS argues) is a different “governmental unit” from DRS for purposes of § 106(c). We disagree.
 

 Section 106(c) provides that “there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.” 11 U.S.C. § 106(c). DSS correctly points out that this sentence makes sense only if the “governmental unit” that asserts a claim against the bankrupt estate is the same (“such”) governmental unit’ against which the estate seeks a setoff. The question, however, is what is meant by “governmental unit.”
 

 The Bankruptcy Code, rather unhelpfully, defines “governmental unit” to mean “United States; State; ... department, agency, or instrumentality of the United States ... [or] a State.” 11 U.S.C. § 101(27). If “governmental unit,” when applied to this context, is read to mean a state “agency,” then § 106(c) would not apply here because DRS and DSS are separate agencies and therefore cannot be the same “governmental unit.” If, on the other hand, “governmental unit” can be read to mean “State,” then both DRS and
 
 *771
 
 DSS would be encompassed within the definition and § 106(c) would apply.
 

 DSS argues that the definition’s inclusion of both the “State” and, separately, an “agency” thereof reveals Congress’s recognition that an agency “can and will act only for itself,” and that, by extension, one agency’s waiver will not strip other agencies of the same state of their immunity in a particular case. Further, DSS argues, a construction of the statute that conflates “agency” with “State” and effectively merges the former into the latter renders the reference to “agency” in 11 U.S.C. § 101(27) useless surplusage.
 
 See Duncan v. Walker,
 
 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (holding that “effect [must be given], if possible, to every clause and word of a statute”) (internal quotation marks omitted); see
 
 also William Ross, Inc. v. Biehn Constr., Inc. (In re William Ross, Inc.),
 
 199 B.R. 551, 556 (Bankr.W.D.Pa.1996) (court could not “ignore” the fact that § 101(27) definition of “governmental unit” includes state agencies).
 

 We do not find these arguments persuasive. First, the most that can be said of the definition set forth in § 101(27) is that it strives toward completeness; we think it a stretch to read it as an implicit recognition that state agencies are always independent. Second, DSS’s surplusage argument assumes that “governmental unit” must be construed the same
 
 way
 
 — ie., as either “State” or “agency” — in every case. But no such absolute construction is mandated by the statute or otherwise required. Rather, we believe that in determining whether “governmental unit” should be read as. “State” or “agency,” the. inquiry should focus on the relationship between the agencies and the state treasury. If that relationship reveals that the agencies act, in effect, as a unitary creditor for non-bankruptcy purposes, the agencies should be treated as such in the bankruptcy context as well.
 

 This approach is supported by the interpretation given to “governmental unit” in other contexts. For example, where general setoff rights are concerned,
 
 see
 
 11 U.S.C. § 553(a), courts, analogizing to the federal government’s right to setoff outside of bankruptcy,
 
 see Cherry Cotton Mills v. United States,
 
 327 U.S. 536, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835 (1946) (recognizing federal government’s right to interagency setoff);
 
 Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.),
 
 94 F.3d 772, 776, 778-79 (2d Cir.1996) (holding that federal government agencies have a common law right to inter-agency setoff), treat agencies and departments of the federal government, “except those acting in some distinctive private capacity,” as a single “governmental unit.”
 
 [5]
 

 Hal, Inc. v. United States (In re Hal, Inc.),
 
 122 F.3d 851, 853 (9th Cir.1997) (internal quotation marks omitted);
 
 see, e.g., Turner v. SBA (In re Turner),
 
 84 F.3d 1294, 1296-98 (10th Cir.1996) (en banc);
 
 United States v. Maxwell,
 
 157 F.3d 1099, 1102 (7th Cir.1998);
 
 In re Nuclear Imaging Sys., Inc.,
 
 260 B.R. 724, 733-34 (Bankr.E.D.Pa.2000) (collecting • cases). The Ninth Circuit has also used this approach in the § 106 context, holding that, with the exception of agencies “acting in some distinctive private capacity,” the United States as a whole, not an agency thereof, is the relevant “governmental unit” for waiver purposes.
 
 See, e.g., Doe v. United States (In re Doe),
 
 58 F.3d 494, 498 (9th Cir.1995). The rationale behind
 
 Doe
 
 is that because the United States holds itself out as a unitary creditor when it
 
 *772
 
 exercises its right to effect interagency setoffs or assert priority for a debt, equity requires that it be treated as a unitary creditor for sovereign immunity purposes as well.
 
 Id.
 
 at 498.
 

 In this case, DSS concedes • that any judgment in favor of DRS will redound to the benefit of the Connecticut state treasury, that DSS is funded from that treasury, and that DRS has a right, pursuant to Connecticut law, to offset a taxpayer’s debt to DRS against any amounts owed by other state agencies to the taxpayer.
 
 See
 
 Conn. GemStat. § 12-39g(a). Thus, like the federal government; the state of Connecticut acts as a unitary creditor.
 
 See Wallach v. New York State Dep’t of Tax & Fin. (In re Bison Heating and Equip., Inc.),
 
 177 B.R. 785, 791 (Bankr.W.D.N.Y.1995) (“The ability of New York State to apply offset for its own benefit inexorably requires a similar application when offset works to its detriment.”);
 
 see also Straight,
 
 143 F.3d at 1391 (holding that Wyoming is a unitary entity for purposes of § 106). Although we recognize that some state governments may operate differently than the federal government, we find no relevant distinctions here.
 

 For the same reasons, we reject DSS’s alternative argument that the Eleventh Amendment itself erects an independent bar against extending the waiver by one state agency to other agencies of the same state. At least where the two agencies in question act as a unitary creditor, fairness (the fundamental driving force behind the waiver-by-litigation doctrine,
 
 see Lapides,
 
 535 U.S. at 620, 122 S.Ct. 1640) demands that a waiver by one be deemed to extend to the other. Thus, we hold that 11 U.S.C. § 106(c) properly identifies one set of circumstances in which a state waives its immunity through its conduct in bankruptcy litigation, and that the statutory criteria of § 106(c) have been satisfied in this case. Pursuant to § 106(c), the trustee may seek from DSS so much of the reimbursements it is owed as will offset the estate’s debt to DRS for unpaid taxes.
 

 CONCLUSION
 

 Accordingly, we affirm the district court’s decision that § 106(c) permits the trustee to seek up to $148,643.34 from DSS by way of offset of DRS’s claim against the bankrupt estate in that amount.
 

 [1]
 

 . DSS and DRS are both agencies of the state of Connecticut and thus immune from suit to the same extent as the state itself.
 
 See Fla. Dep’t of State v. Treasure Salvors, Inc.,
 
 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (sovereign immunity extends to state agencies).
 

 [2]
 

 . The trustee did not appeal the bankruptcy court’s rulings concerning §§ 106(a) and (b) because interlocutory orders favoring an invocation of sovereign immunity are not immediately appealable.
 
 See LaTrieste Rest. & Cabaret v. Vill. of Port Chester,
 
 96 F.3d 598, 599-600 (2d Cir.1996).
 

 [3]
 

 . The question of whether, this waiver extended beyond claims asserted against DRS to claims ásserted against other state agencies
 
 (e.g.,
 
 DSS) is addressed in Part 11(b),
 
 infra.
 

 [4]
 

 . We need not reach the question of whether the Eleventh Amendment actually requires a . setoff cap in these circumstances. Congress plainly has the power to circumscribe the jurisdiction of the federal courts more narrowly than required by the Constitution.
 
 See
 
 Richard H. Fallon, Jr.,
 
 et al., Hart & Wechsler's The Federal Courts and the Federal System,
 
 319-30 (5th ed.2003) (discussing Congress's power to limit the jurisdiction of the federal courts);
 
 see also Seminole Tribe,
 
 517 U.S. at 54, 116 S.Ct. 1114 (discussing sovereign immunity in terms of the jurisdiction of the federal courts). And the trustee, conceding this point, has limited its demand against DSS under § 106(c) to the amount, if any, that the bankrupt estate owes the state.
 

 [5]
 

 . Section 553(a) does not refer to “governmental unit,” but rather to "creditor.” However, “creditor” is defined in 11 U.S.C. § 101(10) to mean an "entity,” and "entity,” in turn, is defined to include "governmental unit,” 11 U.S.C. § 101(15).