**In the Matter of John Hamilton COX, Jr., Kathryn Burgess Cox, Debtors.**

**Gary W. Brown, Trustee of the Estate of John and Kathryn Cox, Plaintiff,**

v.

**Fox Broadcasting Company, Kathy Cox, in her capacity as State Superintendent of Schools, Georgia Department of Education, Defendants.**

**Bankruptcy No. 09–13461–WHD. Adversary No. 09–1068–whd.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Jan. 22, 2010.

A. Alexander Teel, Chris D. Phillips, James C. Cifelli, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Plaintiff.

Oscar B. Fears, III, Georgia Department of Law, John C. Weitnauer, Alston & Bird LLP, Atlanta, GA, for Defendants.

## *ORDER*

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is a Motion to Dismiss Complaint, filed by the defendant, Kathy Cox, in her capacity as State Superintendent of Schools (hereinafter the "Defendant"), and a Motion for Leave to File an Amended Complaint, filed by the plaintiff, Gary W. Brown (hereinafter the "Trustee"), in his capacity as the trustee of the bankruptcy estate of the Chapter 7 debtor, Kathryn Burgess Cox. Both motions are opposed. The motion to dismiss requires the Court to determine whether this Court has jurisdiction to entertain the Trustee's requests for a determination of whether certain funds are property of the Defendant's bankruptcy estate.

### FACTS AND PROCEDURAL HISTORY

The Defendant is the Superintendent of Schools for the State of Georgia. In July and August of 2008, the Defendant completed questionnaires, releases, and contractual agreements necessary to become a contestant on the Fox Network Television show "Are You Smarter than a Fifth Grader?" Contestants on this game show compete to win up to $1 million by correctly answering eleven questions regarding ele-

mentary school subjects. One of the questionnaires completed by the Defendant asked "What would you do with $1 million?" In response, the Defendant stated that she would "Donate to Educational Charities."

The Defendant appeared on the show on August 6, 2008 and answered all eleven questions correctly. When asked on the show what she intended to do with the prize money, the Defendant stated that she would donate the funds to certain educational institutions for the visual and hearing impaired. On that same date, the Defendant executed a Charitable Designation Document requesting that the prize money be transferred to the Fidelity Charitable Gift Fund (hereinafter "Fidelity"). By letter dated October 9, 2008, the Defendant designated as recipients of the charitable gift the Georgia Academy for the Blind in Macon, Georgia; the Georgia School for the Deaf in Cave Spring, Georgia; and The Atlanta Area School for the Deaf in Clarkston, Georgia.

On November 17, 2008, the Defendant and her husband filed a voluntary petition under Chapter 7 of the Bankruptcy Code. At some time in December 2008, Fox Broadcasting Company (hereinafter "Fox") delivered a $1 million check to Fidelity. Fidelity returned the check to Fox due to its concerns that the funds may be subject to the claims of the Defendant's creditors. Fox retains control of the funds. By letter dated April 16, 2009, the State of Georgia asserted an interest in the funds and demanded the funds be paid to the three educational institutions designated by the Defendant. Likewise, the Trustee demanded turnover of the funds on July 2, 2009. As Fox is uncertain as to the right-

ful recipient of the funds, Fox continues to hold the funds, pending a determination by this Court.

On July 31, 2009, the Trustee filed a complaint against the Defendant, in her capacity as the State Superintendent of Schools, and Fox. The Trustee asserts that, pursuant to section 541 of the Bankruptcy Code, the funds are property of the Defendant's bankruptcy estate and is seeking a declaratory judgment, pursuant to Federal Rule of Bankruptcy Procedure 7001(9) and 28 U.S.C. § 2201 to the effect that the estate has all of the Defendant's right and title to the funds, notwithstanding the claims of the Georgia Department of Education. The Trustee also seeks an order directing Fox to turn over the funds to the Trustee.

Fox answered the Complaint and filed a counterclaim/crossclaim for interpleader on August 28, 2009, pursuant to Federal Rule of Bankruptcy Procedure 7022.[1] The Defendant answered the Trustee's Complaint on August 31, 2009 and filed a motion to dismiss the Complaint on September 4, 2009. The Defendant's motion to dismiss asserts that the Complaint fails to state a claim upon which relief can be granted and that the relief requested by the Trustee is barred by the Eleventh Amendment to the United States Constitution.

Subsequently, the Trustee filed a motion for leave to amend his complaint. The Trustee proposes to add two counts to the Complaint. These counts include: 1) avoidance and recovery of a fraudulent transfer; and 2) injunctive relief to prevent a continuing violation of the automatic stay. The Defendant opposes the Trus-

---

**1.** The Court considered the issue of whether Fox should be permitted to interplead the funds at a hearing held on January 19, 2010. At that time, all parties agreed that interpleader should be permitted, so long as the interpleader would be without prejudice to the Defendant's right to assert its sovereign immunity. The interpleader will be allowed by a separate order to be entered at a later time.

tee's motion to amend on the basis that the additional counts fail to state a claim upon which relief can be granted and, therefore, permitting the amendment to add these claims would be futile.

## CONCLUSIONS OF LAW

A. *Whether the Trustee's Request for Declaratory Judgment Should be Dismissed as Barred by Sovereign Immunity*

■■■■ The Defendant seeks dismissal of the Trustee's request for declaratory judgment on the basis that prosecution of such a claim is barred by the Eleventh Amendment to the United States Constitution.[2] "A federal court must dismiss an action barred by the Eleventh Amendment for lack of subject matter jurisdiction." *BHGDN, LLC v. Minnesota,* 598 F.Supp.2d 995 (D.Minn.2009); FED. R.CIV.P. 12(h)(3). Rule 12(b)(1) governs the dismissal of a complaint for lack of subject matter jurisdiction. *See* Fed. R. Bankr.P. 7012 (incorporating Fed.R.Civ.P. 12(b)(1)). When ruling on a motion to dismiss for lack of subject matter jurisdiction, "[a] court must accept the material factual allegations in the complaint as true, but need not draw inferences favorable to the plaintiff." *In re General Media, Inc.,* 335 B.R. 66, 71–72 (Bankr.S.D.N.Y.2005) (citing *J.S. v. Attica Cent. Schools,* 386 F.3d 107, 110 (2d Cir.2004); *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998)). The Court may consider "materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on conclusory or hearsay evidence." *Id.* at 72. The Trustee has the burden of proving the Court's subject matter jurisdiction by a preponderance of the evidence. *See id.* (citing *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir.2002)).

The Trustee's complaint seeks a declaratory judgment that would determine the true and lawful owner of the prize money. The Trustee asserts that the prize money became property of the Defendant's bankruptcy estate because she appeared on a game show in her personal capacity, won the prize, and, at the time she filed her Chapter 7 petition, had not yet made a charitable donation of the funds. The Defendant submits that this claim for relief is barred by the sovereign immunity of the State of Georgia.

■■■■ The Eleventh Amendment states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state." U.S. CONST. amend. XI. The Eleventh Amendment, however, has long been applied to reach suits against a state by its own citizens. *See Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004); *In re Burke,* 146 F.3d 1313 (11th Cir.1998). In interpreting the Eleventh Amendment, the United States Supreme Court has held that each of the States is a sovereign entity and is, therefore, not "amenable to the suit of an individual without its consent." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). "Sovereign immunity is not just a 'personal privilege' of the state, ...,

---

**2.** The Defendant also seeks dismissal of the Trustee's count seeking turnover of the funds for failure to state a claim on the basis that a turnover claim is not appropriate when the ownership of the property is in dispute. Because Fox has agreed to interplead the funds into the registry of the Court, the Trustee will not be required to seek turnover of the funds from Fox. Accordingly, this count of the Complaint is now moot, and the Court need not consider the Defendant's motion to dismiss this count.

but also a jurisdictional limitation on the power of federal courts," which "effectively places suits by private parties against states outside the ambit of Article III of the Constitution." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir.2004) (internal citations omitted).

■■■■ The sovereign immunity of the States is not absolute and can either be abrogated by Congress or waived by the state. First, "Congress can abrogate a state's immunity if it unequivocally expresses its intent to do so and acts 'pursuant to a valid exercise of power.'" *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir.2004) (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). For example, section 106(a) of the Bankruptcy Code attempts to abrogate the sovereign immunity of all governmental units with respect to most disputes that may arise under the Code. *See* 11 U.S.C.A. § 106(a) (enumerating sixty sections of the Bankruptcy Code and stating that the bankruptcy court "may hear and determine any issue arising with respect to the application of such sections to governmental units").[3] Section 106(b) provides for a deemed waiver of sovereign immunity when the governmental entity engages in certain types of conduct, such as filing a proof of claim for a claim that arises out of the same transaction or occurrence as claims held by the estate against the governmental entity (*i.e.*, compulsory counterclaims). *See* 11 U.S.C.A. § 106(b); *see also In re Charter Oak Assocs.*, 361 F.3d 760, 768 (2d Cir.

2004); *In re Lazar*, 237 F.3d 967 (9th Cir.2001); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140 (4th Cir.1997). Congress further expanded the constructive waiver concept by enacting section 106(c), which provides that, if the estate holds a claim against the entity that did not arise out of the same transaction or occurrence as a claim held by the entity (*i.e.*, permissive counterclaims), the entity's immunity is deemed waived to the extent that the estate's claim can be offset against the entity's claim. 11 U.S.C.A. § 106(c).[4]

■■■■ Second, a State can waive its immunity by " 'making a clear declaration' that it intends to submit itself to the jurisdiction of the Federal courts," such as by statute or a provision of its constitution. *See Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 24 (1st Cir.2001) (quoting *College Savings. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676, 119 S.Ct. 2219, 144 L.Ed.2d 575 (1999)), or by participating in litigation. *See Gardner v. New Jersey*, 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (state waived sovereign immunity by filing a claim against the bankruptcy estate); *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir.2004) ("A state is deemed to have invoked the court's jurisdiction when it has made a 'voluntary appearance in federal court.' "). Such a waiver can be found only if the State "voluntarily invokes ... jurisdiction, or else if the State makes a clear declaration that it intends to submit

---

3. Prior to the United States Supreme Court's decision in *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), the Eleventh Circuit Court of Appeals held that section 106(a) was unconstitutional because the attempted abrogation of immunity exceeded Congress' power. *See In re Crow*, 394 F.3d 918 (11th Cir. 2004).

4. Courts have disagreed as to whether Congress had the power to legislate a deemed waiver of immunity under subsections 106(b) and (c). *Compare Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140 (4th Cir.1997) (section 106(b) is unconstitutional), *with, In re Charter Oak Assocs.*, 361 F.3d 760, 770 (2d Cir.2004) (section 106(c) is not unconstitutional).

itself to ... jurisdiction." *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

In *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), the Court held that sovereign immunity did not bar the debtor's dischargeability suit under section 523(a)(8) against a state agency because the suit, which implicated the *in rem* jurisdiction of the bankruptcy court, was not a suit against the State within the meaning of the Eleventh Amendment, and therefore, did not implicate the States' sovereign immunity. *Hood*, 541 U.S. at 451, 124 S.Ct. 1905. The Court left open the question of whether other actions that constitute an exercise of *in rem* jurisdiction would "offend the sovereignty of the State." *Hood*, 541 U.S. at 451 n. 5, 124 S.Ct. 1905. The Court further clarified this question in *Central Virginia Community College v. Katz,* a preference suit, by holding that the "the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Katz*, 546 U.S. 356, 126 S.Ct. 990 (2006). In essence, the Court determined that the States had waived their sovereign immunity as to those "proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts" when they ratified the Constitution, and, therefore, Congress' attempts to abrogate and waive that immunity by statute were unnecessary. *See id.*

▆ From the *Katz* opinion, it can be gleaned that the avoidance and recovery of a preferential transfer is the type of proceeding the bankruptcy court may engage in without offending a state's sovereign immunity, even though such an action would result in the entry of a judgment against the state. Since the Court handed down the decision in *Katz,* the issue presented to bankruptcy courts has, understandably, become whether a particular proceeding under the Bankruptcy Code is "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." For example, in *In re Automotive Professionals, Inc.,* 370 B.R. 161 (Bankr.N.D.Ill. 2007), the bankruptcy court held that the State of Illinois was not protected by sovereign immunity from a suit for turnover of estate property pursuant to section 543. The court noted that "the obligation to obtain control of assets of the estate is a bankruptcy power even more fundamental than the right to retrieve preferential payments," which was at issue in *Katz. Automotive Professionals, Inc.,* 370 B.R. at 182. In *In re Soileau,* 488 F.3d 302, 307–08 (5th Cir.2007), the Fifth Circuit Court of Appeals offered further guidance, stating that the *Katz* decision provides lower courts with "three crucial facets of the exercise of *in rem* jurisdiction that prevent it from interfering with state sovereign immunity: (1) exercise of jurisdiction over the estate of the debtor, (2) equitable distribution of the estate's property among creditors, and (3) discharge."

▆ The Defendant asserts that this Court's ability to determine whether the estate has an interest in the prize money is limited by the fact that the party asserting a right to the property at issue is the State of Georgia. To the contrary, the Court finds that the State of Georgia's Eleventh Amendment immunity does not bar this proceeding. "The present proceeding is one in which the *in rem* jurisdiction of this court has been invoked," as the Trustee's "complaint seeks an adjudication regarding specific property." *In re North Carolina Technological Development Authority, Inc.,* 2005 WL 1331254 (Bankr.M.D.N.C.2005). Whether the exercise of this Court's *in rem* jurisdiction is

barred by the Eleventh Amendment depends upon whether such action is an "affront" to the state's sovereign immunity. *See North Carolina Technological Development Authority, Inc.*, 2005 WL 1331254 at *3. "Whether the exercise of *in rem* jurisdiction will result in an affront to the sovereignty of a State depends upon 'the essential nature and effect of the proceeding as it appears from the entire record.'" *Id.* "'A suit offends a State's sovereign immunity where either the judgment sought would expend itself on the public treasury, or the effect of the judgment would be to restrain the Government from acting, or compel it to act.'" *Id.*

Assuming the facts as the Trustee has alleged, the Court concludes that the resolution of this matter would neither "expend itself on the public treasury" or restrain the State of Georgia from acting or compel it to act. The Trustee simply seeks a determination as to whether the Defendant had an interest in the prize money in her personal capacity at the time she filed her bankruptcy petition. The Trustee requests neither damages against the State nor an order directing the State to turnover the proceeds or to cease and desist its attempts to establish that the Defendant was acting in her official capacity when she appeared on the game show. Neither the fact that the State of Georgia had an expectancy of receiving these funds nor the fact that the State's failure to receive the funds would result in the State's having to "supplant" the funds from other sources, supports the conclusion that this suit "expend[s] itself on the public treasury." Under such logic, a suit to determine the dischargeability of a debt owed to the State, which the Defendant concedes would not be prohibited by sovereign immunity, would also have such an impact on the public treasury. In such a situation, the State would have expected to be repaid and would have had to "supplant" the unpaid funds from other sources after the debt had been discharged.

Here, the Court cannot engage in two of the fundamental purposes of a bankruptcy court—the exercise of jurisdiction over the estate of the debtor and the equitable distribution of the estate's property among creditors—without first determining whether this property belongs to the estate. The Court, therefore, can see no proceeding more "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts" than making this determination. In support of her conclusion that Congress did not intend to abrogate sovereign immunity in this matter, the Defendant points to the absence of section 541 from section 106(a), which enumerates those Code sections and matters that Congress intended bankruptcy courts to hear and determine, notwithstanding an assertion of sovereign immunity. The Court disagrees.

Determining whether a debtor had a legal or equitable interest in property prior to or on the petition date is often a prerequisite to exercising and granting relief under a multitude of Code sections that *are* enumerated by section 106(a), such as section 522 (exemptions), section 362 (the automatic stay), sections 542 and 543 (turnover), section 547 (preferential transfer), section 548 (fraudulent conveyance), and section 726 (distribution of estate assets). The omission of section 541 from section 106(a) does not convince the Court that Congress intended to prohibit bankruptcy courts from making this determination in connection with matters concerning the administration of the estate. *See* 28 U.S.C. § 157(b)(2)(A). It is more likely that Congress assumed that the bankruptcy courts would have the authority to make such a determination as part of their application of these other enumerated sections. For example, a bankruptcy court is permitted to hear and determine

whether a sovereign entity has violated section 362(a)(3) by exercising control over property of the estate. To perform this function, the court must also be permitted to determine, in the first instance, whether the property at issue is, in fact, property of the estate. Any other result would seriously hamper the Court's ability and responsibility to exercise its core bankruptcy jurisdiction and is contrary to the Congressional scheme placing exclusive jurisdiction over property of the bankruptcy estate in this Court through the district court and the standing reference. *See* 28 U.S.C. §§ 1334(e); 157(a).

 As noted above, this Court has exclusive jurisdiction over property of the bankruptcy estate. *See* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction ... of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate...."). It is generally recognized that "[a] proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E)," *In re Duval County Ranch Co.,* 167 B.R. 848 (Bankr.S.D.Tex.1994) (citing *In re Molina Y Vedia,* 150 B.R. 393, 394 (Bankr. S.D.Tex.1992)), and that, "[w]henever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court." *Id.* (citing 28 U.S.C. § 1334(d); *Slay Warehousing Co. v. Modern Boats, Inc.,* 775 F.2d 619, 620 (5th Cir.1985)); *see also In re First Assured Warranty Corp.,* 383 B.R. 502 (Bankr.D.Colo.2008) ("Generally, a dispute over whether an asset is property of a debtor's estate should and must be resolved in favor of [the bankruptcy court's] jurisdiction.").

 Accordingly, if a state court makes a determination that the automatic stay does not apply in a particular instance, perhaps because the focus of an action is not property of the estate, and "the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void ab initio." *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374 (6th Cir.2001); *see also In re Mid-City Parking, Inc.,* 332 B.R. 798 (Bankr. N.D.Ill.2005). In other words, a decision made by a state court as to whether the automatic stay applies to particular property is subject to collateral attack in the bankruptcy court. *See In re Benalcazar,* 283 B.R. 514, 525–26 (Bankr.N.D.Ill.2002), rejected on other grounds, *In re Kmart Corp.,* 290 B.R. 601 (Bankr.N.D.Ill.2002). An erroneous jurisdictional determination regarding the application of the automatic stay is considered to be a modification of the automatic stay, an order which state courts lack jurisdiction to enter. *See id.* at 528.

The Court addresses the above jurisdictional issues to illustrate that this Court is the most appropriate forum in which to make a finding as to whether property is property of the estate. If a state court were to make such a determination and found that these funds are not property of the bankruptcy estate (with the automatic stay in place), the state court would essentially be making a ruling that the automatic stay does not apply to the funds. Such an order would be open to collateral attack in this Court. If the state court's determination were erroneous, it would be tantamount to a modification of the automatic stay, thus making the order void for lack of jurisdiction. This fact highlights the importance of this Court's retaining the threshold ability to determine whether an estate has an interest in property so that it can protect its exclusive jurisdiction over property of the estate.

B. *Whether the Trustee's Motion to Amend the Complaint Should be Granted*

Rule 7015 of the Federal Rules of Bankruptcy Procedure provides that Rule 15 of the Federal Rules of Civil Procedure shall govern requests to amend a pleading. In pertinent part, the rule states:

> (a) A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FED.R.CIV.P. 15(a). Inasmuch as the Trustee filed his motion to amend after the Defendants answered the complaint, the Trustee cannot amend his complaint without leave of the Court or without the written consent of the Defendant and Fox, which the Trustee does not have. In fact, the Defendant opposes the Trustee's first motion on the basis that the requested amendments would be futile because, in the Defendant's view, the two additional counts sought to be added against the Defendant fail to state a claim.

A trial court has considerable discretion when determining whether to grant leave to amend a complaint. *See Jameson v. The Arrow Co.*, 75 F.3d 1528, 1534–35 (11th Cir.1996). "'Although [l]eave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'" *Brewer–Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir.2000). That being said, the purpose of Rule 15(a) is to "assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves." *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir.1981) (citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (noting that the spirit of the procedural rules is merit-based decisions). In *Foman v. Davis*, the United States Supreme Court instructed that, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 181–82, 83 S.Ct. 227 (internal citations omitted).

Here, the Defendant contends that the two additional counts—avoidance and recovery of a fraudulent transfer and injunctive relief to prevent a continuing violation of the automatic stay—fail to state a claim upon which relief can be granted. If the Court finds that the additional claims fail to state a claim, it is appropriate to deny the Trustee's first motion to amend. If, however, the Court rules in favor of the Trustee on that issue, finding that the claims would survive a motion to dismiss under Rule 12(b)(6), the Court finds no other basis upon which the motion should be denied.

First, the Defendant submits that the fraudulent conveyance count under section 548 of the Code would fail to state a claim, contending that the facts alleged in the complaint do not establish that any transfer of the Defendant's personal property was made prior to the petition date. The essence of this argument against allowing the amendment is that, as of the

petition date, assuming for the sake of this argument, the Defendant had a personal interest in the prize money, she had made nothing more than a promise to make a charitable donation, which is not generally enforceable. As this matter is quite early in the discovery stage, and the Trustee is simply requesting the ability to plead two alternative legal theories, the Court finds that no prejudice would befall the Defendant by allowing the amended complaint at this stage in the litigation. It may very well be that the Trustee will be unable to prove that the Defendant had any interest in the funds initially, in which case the Defendant will defeat both the Trustee's attempts to claim the money as property of the estate and to avoid a transfer of the funds to the educational institutions. Conversely, if the Trustee succeeds in proving that the Defendant had a personal interest in these funds, the Trustee either will prevail by establishing that the funds are property of the estate, in which case the addition of the section 548 claim will have been unnecessary, or he will be required to provide further factual and legal support for his contention that the funds were transferred, and that such transfer is a constructive fraudulent conveyance. At this stage, however, the Court sees no reason to deny the Trustee the opportunity to plead in the alternative.

As to the Trustee's request to add a claim against the Defendant for injunctive relief to prevent a continuing violation of the automatic stay, during the hearing on this matter, all parties agreed that this count has been mooted by the Defendant's representation that it has no intention of making any further demands on Fox for possession of the prize money. Accordingly, the Trustee's motion to amend the complaint to add such a claim will be denied.

#### CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss the Trustee's Complaint is **DENIED.**

The Trustee's First Motion to Amend Complaint is **GRANTED** in part and **DENIED** in part. The Trustee will be permitted to amend the Complaint to add a count pursuant to section 548 of the Bankruptcy Code. The Trustee's request to amend the Complaint to add a count for injunctive relief is **DENIED.**