FILED

NOT FOR PUBLICATION

MAR 21 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-11-1186-HPePa |
| ) | |
| DEATH ROW RECORDS, INC., ) | Bk. No. 06-11205 |
| ) | |
| Debtor. ) | Adv. No. 10-02574 |
| _____ ) | |
| ) | |
| JOHN CHIANG, CONTROLLER FOR ) | |
| THE STATE OF CALIFORNIA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| R. TODD NEILSON, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on November 16, 2011
at Pasadena, California

Filed - March 21, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Vincent P. Zurzolo, Bankruptcy Judge, Presiding

Appearances:    Hiren M. Patel, Deputy Attorney General, argued
                for the Appellant.  Uzzi O. Raanan of Danning,
                Gill, Diamond & Kollitz, LLP, argued for the
                Appellee.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: HOLLOWELL, PAPPAS and PERRIS[2], Bankruptcy Judges.

## I. INTRODUCTION

In this interlocutory appeal, the California State Controller ("Controller") seeks the reversal of an order certifying a nationwide class of chapter 7[3] trustees who did, could have, or might in the future make a claim for their respective debtor's funds that escheated to the State of California prepetition. For the reasons given below, we REVERSE the bankruptcy court's certification of the class action and REMAND the matter to the bankruptcy court to issue a certification order solely under Civil Rules 23(a) and 23(b)(2), and which narrows the scope of the certified class action by eliminating claims for interest damages and claims for willful violation of the automatic stay.

## II. FACTS

A. The Bankruptcy Case

In April 2006, Death Row Records, Inc. ("DRR") and Marion "Suge" Knight, Jr. ("Knight") each filed voluntary petitions for relief under chapter 11. In July 2006, appellee R. Todd Neilson ("Neilson") was appointed the chapter 11 trustee for the DRR estate. In January 2009, the Knight estate was consolidated with the DRR estate (the consolidated estates comprise the "Debtor"),

---

[2] Hon. Elizabeth L. Perris, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

with Neilson acting as the chapter 11 trustee. In November 2009, the Debtor's case was converted to chapter 7. Neilson was appointed the chapter 7 trustee ("Trustee").

B.    Trustee's Escheat Claim

In March 2009, the Trustee filed a claim with the Controller on behalf of the Debtor seeking a return of the Debtor's money that had escheated to the State of California ("California") under California's Unclaimed Property Law (the "UPL"), Cal. Civ. Proc. Code ("CCP") § 1500, et. seq. On May 26, 2010, the Controller's office issued a letter to the Trustee ("Letter"), which granted in part and denied in part the Trustee's claim. The Letter explained that the Controller denied thirteen of the sixteen claims asserted by the Trustee on the basis that it was "the long-standing position of this office that once unclaimed property has escheated to California, it is not subject to claims by bankruptcy trustees claiming on behalf of a bankruptcy estate or debtor."

The Letter explained that because thirteen of the accounts had escheated before the bankruptcy petitions were filed, legal and equitable title to the accounts vested in California. The Letter acknowledged that the former owner of the accounts could divest California of title by filing a verified claim under the procedures set forth in the UPL, but until such a claim was filed, verified and approved, "such property would not be belonging or owed to such property or entity (debtor)." The Letter stated that because that procedure had not occurred prepetition, "the property is not part of bankruptcy estate as defined in 11 U.S.C. § 541."

-3-

The Letter continued:

> In addition, a trustee acts on behalf of the bankruptcy estate, not the debtor. For purposes of claiming escheated property, "owner" means the person who had legal right to property prior to its escheat (California Code of Civil Procedures Section 1540; subdivision (d)). Once the property vests in the State of California, only the former owner can claim the property. As a result, it does not appear that the bankruptcy estate, or its trustee, had a legal right to the property before it escheated to the State of California. Consequently, because title to the property sought vested in the State of California, and is not, therefore, property of the debtor, these funds held by the state under the Unclaimed Property Law are not subject to a claim by a bankruptcy trustee.

The total amount of the claims denied was $10,166.44.

C.    The Class Action

On August 25, 2010, the Trustee filed a complaint commencing a class action against the Controller:

(1) for turnover of the class members' and the Debtor's property and for an accounting pursuant to § 543;

(2) for turnover of property under § 542;

(3) for wrongful denial of claims under CCP § 1540;

(4) to avoid and recover unjust enrichment;

(5) for willful violation of the automatic stay;

(6) for declaratory relief seeking a determination that debtors' property that escheats to California prepetition is property of the class members' respective bankruptcy estates subject to the exclusive control of the debtors' respective bankruptcy estates' trustees; and,

(7) for injunctive relief enjoining the Controller from continuing to deny claims made by bankruptcy trustees on behalf of their estates.

-4-

The complaint sought turnover under § 542 and/or § 543 of the amount of escheated funds plus interest and actual damages on the stay violation claim, including costs and attorneys' fees incurred in bringing the class action. The Trustee filed and served a First Amended Complaint (the "Class Action") on September 8, 2010, asserting the identical claims for relief.

D.   Controller's Motion To Dismiss

On October 29, 2010, the Controller filed a Motion to Dismiss under Rules 7012 and 7019 ("MTD"), asserting that the Eleventh Amendment barred the Class Action, the bankruptcy court lacked jurisdiction under 28 U.S.C. §§ 1334 and 157, and the Trustee lacked authority under the Bankruptcy Code to file the Class Action.

On January 3, 2011, the bankruptcy court issued an order ("Dismissal Order") that dismissed the Trustee's CCP § 1540 and unjust enrichment claims. In its Dismissal Order, the bankruptcy court denied the balance of the MTD because the bankruptcy court determined it had jurisdiction over the claims alleging violations of the Bankruptcy Code.

The Controller did not seek leave to appeal the Dismissal Order. On February 24, 2011, the Controller filed an answer denying all the Trustee's allegations. The Controller asserted lack of subject matter jurisdiction as an affirmative defense on the grounds of: sovereign immunity, lack of jurisdiction under 28 U.S.C. §§ 1334 and 157, mootness, and that the Class Action was not a core proceeding. The Controller also asserted as an affirmative defense that the Trustee could not satisfy Civil Rule 23 requirements for class certification (made applicable in

-5-

bankruptcy adversary proceedings by Rule 7023) and lacked standing to act as the class representative.

E.    Class Certification

In December 2010, the Trustee filed a motion for: (1) class certification; (2) appointment of the Trustee as the class representative; (3) permanent appointment of class counsel; and (4) approval of the form of class notice (the "Certification Motion").  The Controller filed an opposition ("Opposition"). The Opposition challenged class certification under Civil Rule 23, the definition of the class ("Class"), and the definition of the Class claims ("Claims").  The Controller did not, however, raise sovereign immunity or other subject matter jurisdiction challenges previously raised in the MTD.

At a March 10, 2011 hearing on the Certification Motion, the bankruptcy court granted the motion and made oral findings concerning the elements of Civil Rule 23(a) and (b) finding that:

(1) numerosity was satisfied because the number of chapter 7 trustees in California and nationwide would be difficult to manage absent a class action;

(2) commonality was satisfied because the Claims bear the same or sufficient number of characteristics in common, so "that it makes sense" to have them litigated in a Class Action;

(3) typicality of injury was satisfied by the Letter, which referred to the long standing position of the Controller that trustees could not make claims for debtors' escheated property; and,

-6-

(4) adequacy of representation was met because there is no conflict of interest between the Debtor's interest and the Class' interest in having the Trustee pursue the Class Action.

The bankruptcy court also found that the issues were clearly defined as required by Civil Rule 23(b) because it was a narrow class where common questions of law and fact predominate.

On April 8, 2011, the bankruptcy court issued an order ("Class Certification Order") certifying the Class Action and appointing the Trustee as Class representative. The Class Certification Order also appointed Class counsel and approved the form of the Class Action notice, which included an "opt out" provision that would permit members to elect to be excluded from the Class.

The Class Certification Order defined the Class as:

> all bankruptcy trustees who previously filed, could have filed, or will file in the future, claims with the State of California on behalf of the bankruptcy estates of debtors whose property escheated to the State of California prior to the filing of the bankruptcy petitions commencing their respective bankruptcy cases, and which claims were rejected by the Controller on the grounds that such [escheated] property is not property of the bankruptcy estates . . . and/or that the trustees lack authority to file bankruptcy claims under CCP Section 1540.

F.   Controller's Motion For Leave To Appeal

On April 21, 2011, the Controller filed a Motion For Leave to Appeal the Class Certification Order and a Notice of Appeal. On April 26, 2011, a BAP panel ("Panel") issued a briefing order. In its brief, the Controller argued that appeal should be permitted so that the Class Certification Order, as well as the sovereign immunity and 28 U.S.C. § 1334 jurisdictional arguments raised in the MTD, could be reviewed. The Trustee's opposition

7

argued that the Controller had waived his sovereign immunity argument by not seeking to appeal the MTD. On June 15, 2011, the Panel issued an order granting leave to appeal. That order is silent on the scope of the appeal. On September 1, 2011, the Panel issued an order granting a Stay Pending Appeal.

## III.  JURISDICTION

The Controller challenges the bankruptcy court's subject matter jurisdiction. To the extent that the challenge is not sustained, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157(a), (b)(1) and (B)(2)(A), (B), (G) and (O). We have jurisdiction under 28 U.S.C. § 158(a)(3) and the Panel's June 15, 2011 order granting leave to appeal.

## IV.  ISSUES

1.    Did the bankruptcy court have subject matter
      jurisdiction over the Class Action?[4]

2.    Did the bankruptcy court err in certifying the Class?

## V.  STANDARD OF REVIEW

We review findings of fact for clear error and issues of law de novo. Litton Loan Serv'g, LP v. Garvida (In re Garvida), 347 B.R. 697, 703 (9th Cir. BAP 2006). A bankruptcy court's determination of its subject matter jurisdiction is reviewed de

---

[4] Only the Class Certification Order is at issue in this interlocutory appeal. The Controller did not raise the sovereign immunity and 28 U.S.C. §§ 1334 and 157 subject matter jurisdiction arguments in the Opposition to the Certification Motion. Because we have the discretion to address purely legal issues prerequisite to the Class Certification Order, we address the bankruptcy court's subject matter jurisdiction in this Memorandum. See, e.g., Pac. Exp. v. United Airlines, Inc., 959 F.2d 814, 819 (9th Cir. 1992).

8

novo. <u>Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)</u>, 439 F.3d 545, 547 (9th Cir. 2006). The existence of sovereign immunity is a question of law reviewed de novo. <u>Del Campo v. Kennedy</u>, 517 F.3d 1070, 1075 (9th Cir. 2008); <u>Emp't Dev. Dep't. of Cal. v. Joseph (In re HPA Assocs.)</u>, 191 B.R. 167, 171 (9th Cir. BAP 1995). We review issues of standing de novo. <u>La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest</u>, 624 F.3d 1083, 1087 (9th Cir. 2010).

We review an order on class certification under Civil Rule 23 for an abuse of discretion. <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 939 (9th Cir. 2009). As the Ninth Circuit noted, appellate review is limited:

> to whether the [court] correctly selected and applied [Civil] Rule 23's criteria. An abuse of discretion occurs when the [court], in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them.

<u>Id.</u> (citing <u>Parra v. Bashas', Inc.</u>, 536 F.3d 975, 977-78 (9th Cir. 2008). To the extent that a ruling on a Civil Rule 23 requirement is supported by a finding of fact, that finding is reviewed for clear error. <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1171-72 (9th Cir. 2010). A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that can be drawn from the facts in the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc).

## VI. DISCUSSION

## I. Subject Matter Jurisdiction

### A. Sovereign Immunity

Under the Eleventh Amendment, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Generally speaking, the doctrine of sovereign immunity precludes a federal court from hearing a private person's suit against a State, state agencies and state officials, acting in their official capacities. Va. Office for Prot. and Advocacy v. Stewart, - U.S. - , 131 S.Ct. 1632, 1637-38 (2011); Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't., 510 F.3d 681, 695 (7th Cir. 2007).

The Controller contends that the Eleventh Amendment deprives the bankruptcy court of jurisdiction over the Class Action because it implicates the State's "core" sovereign interest in establishing and administering the process for dealing with escheated property. In order to evaluate that assertion, we begin with a brief overview of exceptions to sovereign immunity in bankruptcy proceedings.

#### 1. Exceptions To Sovereign Immunity In Bankruptcy Proceedings

There are three generally recognized exceptions to a State's sovereign immunity in a bankruptcy case. The first, and best settled theory, is that by filing a claim, a State waives its sovereign immunity with respect to its claim. Gardner v. New Jersey, 329 U.S. 565, 573-74 (1947). Second, Congress may

10

abrogate a State's immunity if it: (1) unequivocally expresses its intent to do so; and (2) acts pursuant to a valid exercise of its powers. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996). Third, in ratifying the U.S. Constitution, which included authorizing Congress to enact uniform laws on the subject of bankruptcies, the States acquiesced to a limited subordination of their sovereign immunity to the federal courts in the bankruptcy arena. Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 362-63 (2006).

Here, the second and third exceptions are at issue. We briefly review each in turn.

a) Congressional Abrogation Under § 106(a)

In 1994, Congress passed § 106(a) in an effort to abrogate the sovereign immunity of all governmental units with respect to specifically enumerated sections of the Bankruptcy Code, including sections regarding turnover of assets (§§ 542, 543) and the automatic stay (§ 362). However, the validity of § 106(a) was called into serious doubt by the Supreme Court's decision in Seminole Tribe. 517 U.S. at 59. In Seminole Tribe, the Supreme Court overturned Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989), and rejected the contention that Congress could abrogate a States' sovereign immunity under its Article I powers, specifically, the Indian Commerce Clause. Id. at 66.

The Bankruptcy Clause (U.S. Const. art. I, § 8, cl. 4) of the U.S. Constitution is also an Article I power. After Seminole Tribe, a number of courts of appeal, including the Ninth Circuit, relied on Seminole Tribe to hold that § 106(a) was not a valid abrogation of the States' Eleventh Amendment immunity. See,

11

*e.q.,* <u>Mitchell v. Franchise Tax Bd. (In re Mitchell)</u>, 209 F.3d 1111 (9th Cir. 2000).

The Sixth Circuit, however, came to a different result in <u>Hood v. Tenn. Student Assistance Corp.</u>, 319 F.3d 755 (6th Cir. 2003) <u>aff'd</u>, <u>Tennessee Student Assistance Corp. v. Hood</u>, 541 U.S. 440 (2004). The Sixth Circuit's decision in <u>Hood</u> was based on two rationales. The first was that the States waived their sovereign immunity when they collectively agreed in the plan of the Constitutional Convention to allow uniform federal power in the area of bankruptcy. <u>Id.</u> at 752. The second part of the Sixth Circuit's analysis was that the adversary proceeding at issue, a student loan undue hardship discharge complaint, was not a traditional lawsuit in which the state was forced to defend itself against an accusation of wrongdoing. Instead, the adversary proceeding simply allowed the "adjudication of interests claimed in a res." <u>Id.</u> at 768. The State could determine if it wanted to assert an interest in the res or it could decline to do so. Under this analysis, the bankruptcy court's jurisdiction extended only to the res and not directly against the State. <u>Id.</u>

The Supreme Court granted <u>certiorari</u> in <u>Hood</u>, but did not decide if Congress had authority under the Bankruptcy Clause to abrogate States' sovereign immunity in § 106(a). Rather, the Supreme Court held that an adversary proceeding intended to determine if a student loan could be discharged was an <u>in rem</u> proceeding that did not require the bankruptcy court to assert <u>in personam</u> jurisdiction over the State, and consequently, did not impact the State's sovereign immunity. <u>Id.</u> at 453.

12

b) <u>Waiver By Ratification</u>

In 2006, the Supreme Court again examined the issue of States' sovereign immunity in bankruptcy proceedings. In <u>Katz</u>, the bankruptcy trustee of a bookstore business brought an avoidance and preference action against four state colleges. 546 U.S. 356. Instead of deciding if § 106(a) was a valid abrogation of the States' sovereign immunity, the Court phrased the issue as follows:

> The relevant question is not whether Congress has "abrogated" States' immunity in proceedings to recover preferential transfers. <u>See</u> 11 U.S.C. § 106(a). The question, rather, is whether Congress' determination that States should be amenable to such proceedings is within the scope of its powers to enact "Laws on the subject of Bankruptcies."

<u>Id.</u> at 379.

<u>Katz</u> held that "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the <u>in rem</u> jurisdiction of the bankruptcy courts." <u>Id.</u> at 378. While bankruptcy jurisdiction is understood as principally being <u>in rem</u>, the jurisdiction of the court's adjudicating rights in a bankruptcy estate includes "the power to issue compulsory orders to facilitate the administration and distribution of the res." <u>Id.</u> at 362. Therefore, a federal court exercising bankruptcy <u>in rem</u> jurisdiction could also issue ancillary orders in furtherance of that jurisdiction. <u>Id.</u> at 371. <u>Katz</u> recognized that an order mandating a turnover of property "although ancillary to and in furtherance of the court's <u>in rem</u> jurisdiction, might itself involve <u>in personam</u> process." <u>Id.</u> at 372. Therefore, to the extent that the exercise of

13

bankruptcy ancillary jurisdiction implicated the States' sovereign immunity, the States agreed in the plan of convention not to assert that immunity. Id. at 373, 378.

Katz did not define the range of proceedings that would qualify as an ancillary proceeding and fall within the States' waiver of sovereign immunity. However, it provided some guidance by setting out three critical in rem functions of bankruptcy courts: (1) the exercise of exclusive jurisdiction over all of the debtor's property; (2) the equitable distribution of that property among the debtor's creditors; and (3) the ultimate discharge that gives the debtor a "fresh start." Id. at 363-64.

> 2. Sovereign Immunity Does Not Apply To The Class Action's Turnover Claims Even If It Interferes With The State's Procedures For Administering Escheated Property

We now turn to the Controller's sovereign immunity challenges to the Class Action. We begin with a review of the California statutory scheme for dealing with unclaimed property in order to decide if California's sovereign interest is implicated by the Class Action.

Escheat is a procedure for dealing with unclaimed property with roots in feudal law. In common law, if a tenant of real property died without heirs, the land escheated to the lord of the fee, but as feudal titles do not exist in the United States, it is the State, by virtue of its sovereignty, which steps into the place of the feudal lord, to take title to escheated property. See Taylor v. Westly, 402 F.3d 924, 926 (9th Cir. 2005).

14

California's escheat procedures are governed by the UPL. The law has two purposes: (1) "to protect unknown owners by locating them and restoring their property to them"; and (2) "to give the [S]tate, rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed." Harris v. Westley, 116 Cal. App. 4th 214, 219 (Cal. Ct. App. 2004); Fong v. Westly, 117 Cal. App. 4th 841, 844 (Cal. Ct. App. 2004).

The UPL distinguishes between "escheat" and "permanent escheat." CCP § 1300(c) and (d). Where property has not permanently escheated, title vests in California; but, the title is defeasible and meant to be temporary until a claim by the owner is made pursuant to the UPL. Morris v. Chiang, 163 Cal. App. 4th 753, 757 (Cal. Ct. App. 2008). Owners[5] of property that the Controller holds, but that have not permanently escheated to California, may claim and receive their property back, but interest is not payable on a claim for escheated funds. Id. at 756; CCP § 1540(c). The UPL provides that if a claimant is dissatisfied with the Controller's determination not to return escheated property, the claimant may seek judicial review of the denial in California state court. CCP § 1352(c).

To the extent funds held by the Controller have not permanently escheated to the State, the Eleventh Amendment does

---

[5] An owner is defined as "the person who had legal right to the property prior to its escheat, his or her heirs, his or her legal representative, or a public administrator acting pursuant to authority granted in Sections 7660 and 7661 of the Probate Code." CCP § 1540(d).

15

not bar the Class Action because it seeks a return of the Class members' — not California's — property. <u>Suever v. Connell</u>, 439 F.3d 1142, 1146-47 (9th Cir. 2006); <u>see also</u> <u>Taylor</u>, 402 F.3d at 933.

The Controller does not, however, argue that the Class Action is improper because it seeks California's funds. Instead, he argues that the Class Action improperly interferes with California's core interest in administering the UPL. Unlike the plaintiffs in <u>Suever</u> and <u>Taylor</u>, where claims were not initially filed with the Controller, here, the Trustee did file a claim with the Controller. Therefore, according to the Controller, California's "core" interest in having appeals of denied claims heard in California state court bars the Class Action. Furthermore, because the Class definition includes trustees whose claims were rejected because of a determination that they "lacked authority" to file claims under CCP § 1540, the Controller asserts that the Class Action improperly seeks to interfere with his administration of California law.

However, the Controller ignores a critical fact. The reason why the Class members do not have authority to file claims under CCP § 1540 is because of the Controller's determination that debtors' escheated funds are not bankruptcy estate property. The Class Action, therefore, challenges the Controller's application of federal law, not the UPL.

Nevertheless, the Controller asserts that any challenge to the Controller's alleged policy, even if the policy is based on an interpretation of federal bankruptcy law, must be brought in

16

California state court pursuant to § 106(a)(4).[6]  Whatever the scope of Congressional abrogation may be under § 106(a) after Hood and Katz, the provisions of § 106(a), which exempt States from federal bankruptcy law remain viable.  2 COLLIER ON BANKRUPTCY ¶ 106.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011).  Thus, according to the Controller, § 106(a)(4) requires that denials of trustees' claims to escheated property be heard exclusively in a California state court.

Section 106(a)(4)'s scope, however, is limited to the enforcement of orders against a State.  It does not require that state procedures be followed to obtain that order.  If jurisdiction is proper, an order may be obtained against a State in federal court.  Once the order is obtained, § 106(a)(4) requires that it be enforced, consistent with applicable state law.

The Controller contends that because the Trustee made a claim under the UPL, he acknowledged that he was bound to comply with the UPL's requirements regarding that claim.  As a result, the Controller contends that the Trustee's only recourse, if he was unhappy with the Controller's decision, was to file an action in California state court.  If the Controller's rejection of the Debtor's claims was based on state law, the Controller's argument might be persuasive.  However, once a dispute arises about

---

[6] Section 106(a)(4) provides: "The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States."

17

whether property is property of a bankruptcy estate, exclusive jurisdiction to resolve that question lies with the federal courts. 28 U.S.C. § 1334(e); In re Wash. Mut., Inc., 461 B.R. 200, 217 (Bankr. D. Del. 2011); Brown v. Fox Broad. Co., (In re Cox), 433 B.R. 911, 919 (Bankr. N.D. Ga. 2010); In re Roman Catholic Archbishop of Portland in Or., 335 B.R. 842, 850-51 (Bankr. D. Or. 2005). Because the Class Action is limited to members whose claims are denied because of the purported determination that such funds are not bankruptcy estate property, jurisdiction is proper in the bankruptcy court.

In his reply brief, the Controller asserts that if bankruptcy courts have exclusive jurisdiction over estate property, there is no need for the Class Action because the Class members can file turnover actions in their individual bankruptcy cases. This argument is meritless. Just because individual trustees may file turnover actions in their cases, does not mean that a class action is not appropriate. Here, each claim of individual trustees is quite small — making it difficult for the trustees to obtain adequate legal representation. A class action permits the trustees to spread litigation costs and, therefore, it may be the most efficient way for trustees to adjudicate their claims.

The Controller also argues that Suever and Taylor are not applicable because the holdings in those cases require a showing that in refusing to return escheated property, the Controller has committed ultra vires or unconstitutional acts. See Suever, 439 F.3d at 1147. According to the Controller, the determination that debtors' escheated funds are not property of their

18

bankruptcy estates is, at most, a legal error, not an "ultra vires" act. However, wrongfully exercising power over estate property is not just a legal error, it's a violation of federal law and, therefore, beyond the powers granted to the Controller under the UPL. Accordingly, if the Class Action allegations are true, the Controller's action would constitute an ultra vires act.[7]

To the extent turnover claims of the Class Action do not seek anything more than turnover of debtors' escheated property, the Eleventh Amendment does not bar the Claims. Id. Moreover, to the extent that California has a sovereign interest in having the UPL's procedures followed, that interest was waived regarding determinations of what constitutes bankruptcy estate property when California ratified the Constitution. Katz 546 U.S. at 373, 378.

### 3. The Class Action's Assertion Of In Personam Jurisdiction Over The Controller Is Not Proper

#### a) Turnover Claims

The Controller asserts that bankruptcy in rem jurisdiction, as explained in Katz and Hood, is limited to adjudicating claims of specific property of individual bankruptcy estates and that because the Class Action seeks an injunction to overturn an alleged policy of the Controller, it improperly invokes the in personam jurisdiction of federal courts over a state officer.

In Katz, however, the Supreme Court held that bankruptcy

---

[7] We do not need to decide whether the Class Actions' allegations are true, only that it alleges actions which would be ultra vires. See Taylor, 402 F.3d at 934.

19

jurisdiction could properly be asserted over ancillary proceedings, including _in personam_ proceedings to the extent necessary to effectuate jurisdiction over the res. _Id._ at 1004. Accordingly, the exercise of ancillary _in personam_ jurisdiction over a state officer, if necessary to effectuate a turnover of estate assets, is permitted because the States agreed in the plan of convention not to assert that immunity. _Id._ at 373. The result is not any different because the _in personam_ jurisdiction is being asserted in a class action. The compensatory purpose of class actions, which permit litigation and compensation of small claims that would otherwise not be pursued, is as important inside bankruptcy as outside. _In re Am. Reserve Corp._, 840 F.2d 487, 492 (7th Cir. 1988); _Aiello v. Providian Fin. Corp., Inc._ _(In re Aiello)_, 231 B.R. 693, 712 (Bankr. N.D. Ill. 1999).

b) _Stay Violation Claims_

The automatic stay is the mechanism which protects the core bankruptcy functions of exercising jurisdiction over estate property, equitably distributing estate property and protecting a debtor's discharge. The stay "facilitates the orderly administration and distribution of the estate by 'protect[ing] the bankruptcy estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equally among the creditors.'" _Fla. Dep't of Revenue v. Diaz (In re Diaz)_, 647 F.3d 1073, 1085 (11th Cir. 2011) _quoting_ _Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n_, 892 F.2d 575, 577 (7th Cir. 1989). If a proceeding's purpose is to facilitate the _in rem_ function of bankruptcy jurisdiction by assuring that the

20

automatic stay is honored, then it falls within the "consent by ratification" exception to sovereign immunity.  Id. at 1085-86 (determining that there will generally be bankruptcy jurisdiction over contempt motions against States for stay violations); see also In re Griffin, 415 B.R. 64, 71 (Bankr. N.D.N.Y. 2009) (bankruptcy jurisdiction over emotional distress damages for stay violation).

The Controller cites In re Diaz as authority for the proposition that there is no waiver of sovereign immunity for stay violation claims after a debtor's discharge is issued.  In In re Diaz, a chapter 13 debtor sued the Departments of Revenue and Social Services for damages as a result of an alleged stay violation when they attempted to collect a child support obligation.  The debtor brought suit after the chapter 13 plan had been completed and the estate assets had been fully distributed.  As a result, the court found that there was no longer any in rem function of the bankruptcy court because the estate had been fully distributed.  647 F.3d at 1086.

In re Diaz does not, however, stand for the broad proposition that there cannot be an exercise of ancillary jurisdiction for stay violations after a debtor receives a discharge.  Such a result would be inconsistent with § 362(a)'s protection of estates'- as well as debtors'- property.  11 U.S.C. § 362(a)(2), (3) and (4); Little Pat, Inc. v. Conter (In re Soll), 181 B.R. 433, 444 (Bankr. D. Ariz. 1995) ("The automatic stay protects not only debtors, but also property of the estate.").  It is also inconsistent with § 362(c)(1), which maintains the stay until such property is "no longer estate

21

property." Estate property remains protected by the automatic stay until it is divested from the estate by exemption, abandonment, sale and, if properly scheduled, by the closing of the case under § 554(c).

### c) Damages[8]

The Class Action seeks interest on the Class members' escheated property from the time a claim is denied by the Controller until paid. The UPL, however, does not allow a recovery of interest on returned escheated funds. CCP § 1540(c). The Class Action cannot provide more relief to the Class than is otherwise available to other claimants under the UPL. Therefore, § 106(a)(4) applies and requires that any turnover order be consistent with the UPL, which limits recovery solely to the amount of the escheated funds.

The Controller argues that § 106(a)(4) should also apply to any damages arising out of the stay violation claims because the UPL does not provide for damages for violations of § 362(a). However, the UPL is not the law at issue in considering stay violations. Stay violations are governed by the Bankruptcy Code. The Controller's position would allow governmental units to violate the stay with impunity because there would likely never be a state law that authorizes damages for such violations. As a result, bankruptcy courts would be unable to enforce their

---

[8] The Class Action seeks actual damages in the form of interest on the turnover claims and actual damages and sanctions on the stay violation claims. However, in his Answering Brief and at oral argument, the Trustee asserted that he is seeking damages solely for the costs and attorneys' fees incurred in prosecuting the Class Action.

22

jurisdiction over estate property and debtors' discharges. See, e.g., Fla. Dep't. of Revenue v. Omine (In re Omine), 485 F.3d 1305, 1314 (11th Cir. 2007), opinion withdrawn due to settlement, 2007 WL 6813797 (June 26, 2007)("The bankruptcy court's ancillary order to enforce an automatic stay, which is one of the fundamental debtor protections provided by the bankruptcy laws, operates free and clear of the Florida DOR's claim of sovereign immunity.").

In summary, the Claims for interest on escheated property are barred by sovereign immunity, but the damage claims for stay violation are not.

B.    Jurisdiction Under 28 U.S.C. §§ 1334(a) And 157

In addition to seeking dismissal under Civil Rule 12 for lack of subject matter jurisdiction because of sovereign immunity, the Controller also sought dismissal under 28 U.S.C. §§ 1334 and 157.  On appeal, the Controller's only mention of this argument appears in a footnote asserting that the Class Action "is not really an action that arises under §§ 543 [sic], 543 or 362, so the bankruptcy court lacked authority to assert jurisdiction under 28 U.S.C. §§ 1334 and 157."  The Controller does not further explain that statement; nevertheless, we will do our best to address it.

The Claims are based on § 105 (contempt), § 362 (violations of the stay); and § 542 (turnover of estate property).  Such claims arise under the Bankruptcy Code and, therefore, the district court has jurisdiction over the Claims pursuant to

23

28 U.S.C. § 1334(b).[9] As explained below, the Claims are also "core" proceedings under 28 U.S.C. § 157(b)(2) and, accordingly, bankruptcy courts may enter final judgment in such proceedings subject to any constitutional limitations on the powers of Article I courts under <u>Stern v. Marshall</u>, – U.S. – , 131 S.Ct. 2594 (2011).

The Class Action seeks turnover of estate property. Before turnover can be required, there must be a determination that the property is estate property. The Ninth Circuit has distinguished actions seeking to obtain <u>property owed</u> to a debtor from actions seeking to obtain <u>property of</u> a debtor. <u>See, e.g.</u>, <u>John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)</u>, 917 F.2d 1162, 1165 (9th Cir. 1990). With respect to the latter, "an action to obtain property of the estate would necessarily involve a determination regarding 'the nature and extent of property of the estate,' the action would also be a matter 'concerning the administration of the estate' and, therefore, a core proceeding." <u>Id.</u> (citing 28 U.S.C. § 157(b)(2)(A)).

A determination of whether there has been a stay violation is also a core proceeding. <u>Johnson v. Smith (In re Johnson)</u>, 575 F.3d 1079, 1083 (10th Cir. 2009). Exercise of civil contempt

---

[9] Section 1334(b) provides in relevant part:

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

powers under § 105(a), if based on a core matter such as enforcement of the automatic stay, is also a core matter. Mountain Am. Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 448 (10th Cir. 1990).

Accordingly, the bankruptcy court did not err in determining that it had subject matter jurisdiction over the Class Action under 28 U.S.C. §§ 1334 and 157.

C.    Nationwide Scope Of The Class Action

The Controller argues that even if the bankruptcy court has jurisdiction over the Debtor's escheat claims, that jurisdiction cannot be extended to assert jurisdiction over other bankruptcy estates. According to the Controller, a bankruptcy court's jurisdiction is strictly limited to the cases filed in its court and may not be extended to cases in other districts.

Questions regarding the territorial scope of a bankruptcy court's jurisdiction must begin with an analysis of district court jurisdiction from which it is derived. Under 28 U.S.C. §§ 1334(a) and (b), district courts have jurisdiction over all bankruptcy cases, and over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." Pursuant to 28 U.S.C. §§ 1334, 157, and 151, district courts may assign their bankruptcy jurisdiction to bankruptcy courts.[10] Accordingly, with the exception of personal injury tort claims (28 U.S.C. § 157(b)(5)), bankruptcy courts have authority to

---

[10] This is subject to any constitutional limits on the authority of Article I judges. See generally Stern v. Marshall, 131 S.Ct. 2594 (2011).

25

adjudicate all matters that fall within the district court's bankruptcy jurisdiction.

The Controller asserts, however, that the reference in 28 U.S.C. § 1334(e)[11] to "a case" limits bankruptcy jurisdiction to the district court where the case is filed – the so-called "home court." But, federal bankruptcy jurisdiction is not that narrow. See Noletto v. NationsBanc Mortg. Corp. (In re Noletto), 244 B.R. 845, 851-852 (Bankr. S.D. Ala. 2000) holding that "home court" interpretation of 28 U.S.C. § 1334(e) rendered the venue provisions of 28 U.S.C. § 1409 meaningless. The Noletto court concluded that only in rem claims against estate property were limited to the "home court." Id. at 856; see also Cano v. GMAC Mortg. Corp. (In re Cano), 410 B.R. 506, 550-51 (Bankr. S.D. Tex. 2009) ("Nothing within [28 U.S.C] §§ 1334 or 157 ties bankruptcy jurisdiction over debtor adversary proceedings to the location of the debtor's bankruptcy case.").

Here, the Class Action seeks a determination that the escheated funds are property of the Class members' bankruptcy estates subject to turnover and an injunction against continued denial of claims based on the Controller's allegedly improper policy. A request for a determination that the Class members have a right to a turnover of property – debtors' escheated funds – is not the same as the determination that the Class members

---

[11] 28 U.S.C. § 1334(e) provides, in relevant part, "The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction: (1) of all the property, wherever located, of the debtor as of the commencement of such case, and (2) of property of the estate."

have a right to a specific amount of escheated funds.[12] Therefore, the turnover, declaratory and injunctive relief claims are not solely in rem claims, and the nationwide scope of the Class Action as to those claims is proper.

However, the nationwide jurisdiction over the Class Action stay violation claims is not appropriate because § 362(k) provides relief only to individuals. Damages suffered as a result of stay violations are not suffered by trustees as individuals, but as the representatives of the bankruptcy estate. Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995). The only way a trustee can recover damages for stay violations is by bringing an action under § 105(a) for civil contempt. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189-90 (9th Cir. 2003).

Civil contempt proceedings must be brought by a motion in the court where the bankruptcy case is pending. Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1190 (9th Cir. 2011) ("[C]ontempt proceedings brought by the trustee . . . are contested matters that must be brought by motion in the bankruptcy case under Rule 9014.") (emphasis added).[13] Accordingly, the bankruptcy court lacks subject matter

---

[12] To the extent that the Trustee seeks turnover of a specific amount, his claim is limited to the approximately $10,000 allegedly due in the Debtor's case.

[13] Barrientos involved an alleged violation of a discharge injunction, but the holding of the case, which is based on Rule 9020, applies to any motion for contempt.

27

jurisdiction over the stay violation claims in cases pending in other bankruptcy courts.

In summary, the Class Action may not seek interest on the Class member's claims for escheated property and the bankruptcy court lacks jurisdiction over stay violation claims in cases not filed in its own court. We reject the balance of the Controller's jurisdictional challenges to the Class Action.

**II.  Class Certification**

A.  Article III Standing

We turn, now, to the Controller's challenge to the Class Certification Order. We begin with the Controller's arguments that the Trustee and Class members lack standing under Article III of the U.S. Constitution.

Article III standing requires that the party invoking the court's authority demonstrate that he personally suffered actual or threatened injury in fact, that the injury be a result of defendant's action, and that the injury be redressable by judicial decision. Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 471-72 (1982).

1.  Trustee's Standing

The Controller asserts that the Trustee lacks standing because the Class Action is allegedly being pursued solely for the benefit of bankruptcy trustees in other bankruptcy cases.[14]

---

[14] Even though the Controller did not raise this argument before the bankruptcy court, because Article III standing is a jurisdictional requirement that cannot be waived, it may be considered as part of this appeal. See United States v. Hayes, 515 U.S. 737, 742 (1995).

28

In support of his argument, the Controller cites cases that stand for the proposition that a bankruptcy trustee may not prosecute class actions solely for the benefit of third-party creditors where the only recovery for the bankruptcy estate is an administrative claim for the trustee's expenses. <u>Williams v. Cal. 1st Bank</u>, 859 F.2d 664, 667 (9th Cir. 1988); <u>In re Wash. Group, Inc.</u>, 476 F.Supp. 246, 252 (M.D.N.C. 1979).

The Trustee counters that the Class Action will benefit the Debtor because the Trustee has negotiated a fee agreement that caps attorneys' fees at $5,000, thereby assuring a minimum recovery of approximately $5,000 for the Debtor's creditors. The Trustee argues that should he separately pursue the Debtor's claims, the cost of the litigation would far exceed the amount of the claims. Therefore, the Trustee argues that pursuing the Class Action is consistent with his fiduciary duty to the Debtor's creditors and that it is being pursued for the benefit of those creditors as well as the Class.

The cases cited by the Controller are distinguishable because here, the Class Action is being prosecuted for the benefit of the Debtor's estate as well as the Class. The Trustee, therefore, meets the Article III requirement of demonstrating that he has an injury, which can be redressed by a favorable decision in the Class Action.

## 2. Class Members' Standing

The Controller challenges the inclusion of future claimants in the Class because future claimants have not yet filed claims with the Controller and, therefore, by definition, cannot have been injured by the Controller's alleged policy. However, when a

29

class action challenges a policy of the defendant, inclusion of future claimants is appropriate. <u>Apilado v. N. Am. Gay Amateur Athletic Alliance</u>, 792 F.Supp.2d 1151, 1164 (W.D. Wash. 2011) (citing <u>Armstrong v. Davis</u>, 275 F.3d 849, 865 (9th Cir. 2001) <u>cert. denied</u>, 537 U.S. 812 (2002)); <u>Davis v. Astrue</u>, 250 F.R.D. 476, 485 (N.D. Cal. 2008);.

The Controller also asserts that future members of the Class will not be affected by the Controller's actions because if bankruptcy courts have exclusive jurisdiction over estate property, claims for escheated property can be filed in the bankruptcy court where the Class members' cases are pending. This assertion lacks merit. Bankruptcy courts have exclusive and final jurisdiction to determine if property is property of a bankruptcy estate. Once that determination is made, it does not follow that the federal court is the proper tribunal in which to adjudicate state law issues related to estate property.

Finally, the Controller challenges the inclusion in the Class of trustees who could have but did not file claims with the Controller. We agree with the Controller that the Class may not include trustees in pending and prior cases who did not actually file a claim with the Controller. <u>See, e.g.</u>, <u>Serena v. Mock</u>, 547 F.3d 1051, 1054 (9th Cir. 2008); <u>Madsen v. Boise State Univ.</u>, 976 F.2d 1219, 1220 (9th Cir. 1992) ("[A] plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit."). Accordingly, the Class may not properly include

30

trustees who could have but did not file claims with the Controller.[15]

B.   <u>Statute Of Limitations</u>

The Controller contends that the Class certification is improper because the Class could potentially include claims that might be barred by the statute of limitations.  However, the Controller failed to raise the statute of limitations argument before the bankruptcy court, in the MTD, in the answer to the Class Action, or in the Opposition.  Because a statute of limitations defense is an affirmative defense, it cannot be considered for the first time on appeal.  <u>Roberts v. Coll. of the Desert</u>, 870 F.2d 1411, 1414 (9th Cir. 1988).

C.   <u>Class Certification Under Civil Rule 23</u>[16]

Historically, class actions were used in English chancery courts for resolving disputes where joinder of all parties was

---

[15] Trustees who failed to file claims in the past may, however, still be members of the Class as future claimants.

[16] Because we have determined that the bankruptcy court cannot assert jurisdiction over the stay violation claims of the Class Action under 28 U.S.C. § 1334(e), we do not address the stay violation claims in our Civil Rule 23 analysis.  We note, however, that a number of courts have refused to certify class actions for stay and/or discharge violations because the element of damages would require a detailed examination of the facts surrounding each class member's claim, thereby making it impossible for the class to meet the commonality requirements of Civil Rule 23(a)(2).  <u>See</u> <u>In re Aiello</u>, 231 B.R. at 712 (too many variations in claims for actual damages under § 362(h) to meet commonality requirements); <u>Walls v. Wells Fargo Bank, N.A. (In re Walls)</u>, 262 B.R. 519, 529 (Bankr. E.D. Cal. 2001) (extent of damages will depend not just on the class-wide behavior of the defendant but on the extent of damages to each individual debtor).

31

not possible. Civil Rule 23 is based on that practice. It authorizes class actions in the interest of judicial economy and efficiency. One of the primary purposes of Civil Rule 23 is to spread litigation costs and afford individual claimants with small claims access to judicial relief that would otherwise be economically unavailable to them. In re Aiello, 231 B.R. at 709.

While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Civil Rule 23. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1192-93 (9th Cir. 2001). Class certification involves a two-part analysis. First, the movant must demonstrate that the proposed class satisfies the requirements of Civil Rule 23(a) that:

(1) the members of the proposed class be so numerous that joinder of all claims would be impracticable;

(2) there be questions of law or fact common to the class;

(3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and

(4) the representative parties must fairly and adequately protect the interest of the class.

If a movant meets the requirements of Civil Rule 23(a), then at least one of the three subsections of Civil Rule 23(b) must also be met before a class action may proceed.

1. Civil Rule 23(a)

a) Numerosity

The bankruptcy court found that the Class Action satisfies the numerosity requirement because the number of potential Class

32

members – trustees throughout the United States – is large. The Controller does not challenge that finding on appeal.

### b)   Commonality

Commonality focuses on the relationship of common facts and legal issues among class members, but:

> All questions of fact and law need not be common to satisfy [Civil Rule 23(a)(2)]. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). The Trustee contends that the commonality requirement has been met because Class membership includes numerous common factual elements, including that all Class members are trustees with an existing or potential claim to escheated funds that would be rejected by the Controller. The common legal issues include whether debtors' interest in escheated funds is property of their bankruptcy estates, and, whether trustees in such cases have standing to file claims for the escheated funds.

The Controller counters that the Class Action would require the bankruptcy court to determine the amount due to each individual trustee, and therefore, when such individualized determinations are required, the commonality standard of Civil Rule 23(a)(2) cannot be met.[17]   However, the Trustee asserts that

---

[17] The Trustee argues that, because the Controller did not make this argument before the bankruptcy court, we should not consider it for the first time on appeal. In conducting the Civil Rule 23 analysis, the bankruptcy court necessarily made findings of fact which normally should not be reviewed for the first time on appeal. El Paso v. Am. W. Airlines, Inc. (In re Am
(continued...)

33

the Class Certification Order does not require individual determination of specific amounts due to each Class member. Rather, it defines the Class in terms of whether its members are "entitled" to turnover and an accounting of debtors' escheated funds under § 542 and § 543. "Entitle" means "to furnish with proper grounds for seeking or claiming something." BLACK'S LAW DICTIONARY 532 (6th ed. 1990). To the extent that the Class Action requests a determination that Class members have a right to escheated funds that have been withheld solely on the grounds that the funds are not estate property (but not a determination of the amount due to each Class member), then certification is proper.

### c) <u>Typicality</u>

Civil Rule 23(a)(3) requires that the claims of the class representative be typical of the class claims. In examining typicality, courts consider "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" <u>Kanawi v. Bechtel Corp.</u>, 254 F.R.D. 102, 110 (N.D. Cal. 2008)

---

[17](...continued)
<u>W. Airlines, Inc.</u>), 217 F.3d 1161, 1165 (9th Cir. 2000) (Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so.). However, when the issue is one of law and either does not depend on the factual record, or the record has been fully developed, we may address the argument. <u>Marx v. Loral Corp.</u>, 87 F.3d 1049, 1055 (9th Cir. 1996). Here, the record is fully developed regarding the facts relevant to the commonality determination and, therefore, we exercise our discretion to review it.

34

citing <u>Hanon v. DataProducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992). The bankruptcy court found that the Letter describing the Controller's "long standing position" of rejecting trustee claims met the typicality requirement.

The Controller contends that the typicality requirement has not been met because the Class includes members who have not yet filed claims with the Controller. However, where the challenged conduct is a policy or practice that affects all class members, the injuries of the class representative and that of the class members need not be identical. Typicality is met if the class representative and members suffer identical injuries as a result of the alleged wrongful policy. See <u>Armstrong v. Davis</u>, 275 F.3d at 868-69. Here, the Trustee and the Class members all suffer the same injury: the denial or potential denial of their claim by the Controller based on the Controller's stated position that the funds are not property of the bankruptcy estate.

d) <u>Adequacy Of Representation</u>

Finally, Civil Rule 23(a)(4) requires a determination that the class representative will adequately protect the interests of the class. In determining whether the interests of a class will be adequately represented, the court must determine that the class representative does not have an interest antagonistic to the class; and, that the class counsel must be qualified, experienced and able to conduct the litigation. James W. Moore et al., 5 MOORE'S FEDERAL PRACTICE § 23.25([3][a]) (3d ed. 2007).

The Controller argues that the Trustee cannot satisfy Civil Rule 23(a)(4) because there is an inherent conflict of interest between the Trustee's fiduciary duty to the bankruptcy estate and

35

his role as Class representative. A potential for conflict between a bankruptcy trustee's fiduciary obligations to efficiently and quickly administer a bankruptcy estate and to act as a class representative has long been recognized. See Dechert v. Cadle Co., 333 F.3d 801, 802-03 (7th Cir. 2003); Centrue Bank v. Samson (In re Thompson), 2010 WL 4065421 *2-3 (S.D. Ill. Oct. 15, 2010). However, there is no per se rule barring a bankruptcy trustee from serving as a class representative. Dechert recognized that there could be situations where only a fiduciary could act as a class representative. 333 F.3d at 803.

Here, as the bankruptcy court noted: "Who else but a bankruptcy trustee can assert that the Controller is improperly denying payment of claims to bankruptcy trustees?" Thus, because the Debtor is affected by the same alleged improper conduct as the Class, the bankruptcy court found that no conflict would be suffered by the Debtor by having the Trustee pursue the Class Action. We see nothing illogical about the bankruptcy court's determination and, accordingly, find no abuse of discretion with respect to its determination that the Trustee could act as Class representative.

           2.    Civil Rule 23(b)

Once the requirements of Civil Rule 23(a) are met, at least one of the requirements of Civil Rule 23(b) must also be satisfied before a class can be certified. Civil Rule 23(b) classifications are written in the alternative. In this case, the bankruptcy court certified the Class under Civil Rule 23(b)(1)(A), (b)(2) and (b)(3).

36

Civil Rule 23(b)(1)(A) is appropriate if prosecuting separate actions would create a risk of inconsistent results that would establish incompatible standards of conduct for the party opposing the class or absent class members. Even though the Certification Order certified the Class under Civil Rule 23(b)(1), the bankruptcy court did not make a specific finding that separate actions would create a risk of inconsistent results or incompatible standards of conduct for the Controller. It is unlikely that such a finding could be made.

The Ninth Circuit has adopted a conservative view of Civil Rule 23(b)(1), which requires that either: (1) "rulings in separate actions would subject [a] defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" Mateo v. M/S Kiso, 805 F.Supp. 761, 772 (N.D. Cal. 1991) quoting McDonnell Douglas Corp. v. U.S. Dist. Ct. of Cal., 523 F.2d 1083, 1086 (9th Cir. 1975). Neither of these two conditions is met by the Class Action. If the Class is not certified, it is not clear that the Controller will be subject to multiple individual actions or incompatible judgments. In fact, if the Trustee were to prevail on the Debtor's claims, California's law of issue preclusion would likely prevent the Controller from denying other trustees' claims for debtors' escheated property.[18]

---

[18] Under California law, the party asserting issue preclusion has the burden of establishing the following
(continued...)

37

If, however, the Trustee pursues an action solely in Debtor's case against the Controller and fails, that result would not bind other bankruptcy estates because those estates are not in privity with the Debtor. Accordingly, a ruling against the Trustee will not "inescapably" alter the rights of other trustees having similar claims. Id. at 773. Consequently, the bankruptcy court abused its discretion in certifying the Class under Civil Rule 23(b)(1).

Civil Rule 23(b)(2) provides for Class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Zinser, 253 F.3d at 1195. Here, while the bankruptcy court made no specific findings, it did find that the Letter demonstrated a commonality

---

[18](...continued)
"threshold" requirements:

    (1)   the issue sought to be precluded must be identical to that decided in a former proceeding;

    (2)   the issue must have been actually litigated in the former proceeding;

    (3)   it must have been necessarily decided in the former proceeding;

    (4)   the decision in the former proceeding must be final and on the merits; and,

    (5)   the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 104 (9th Cir. BAP 2007).

of claims, which is consistent with the findings required under Civil Rule 23(b)(2). Under the Controller's policy, all bankruptcy trustees are denied the right to make a claim for debtors' escheated funds for the same reason — the Controller's determination that such funds are not estate property.

Certification of a class under Civil Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive relief, not monetary. Id. The Controller asserts that the bankruptcy court's certification under Civil Rule 23(b)(2) was error because the Class Action seeks monetary relief for the amount of each estate's escheated funds. However, at oral argument and in his brief, the Trustee asserted that the only damages being sought are for attorneys' fees incurred in bringing the Class Action. Assuming that is the case, then the damages being sought are merely incidental to the primary claims for injunctive and declaratory relief. Daly v. Harris, 209 F.R.D. 180, 192 (D. Haw. 2002).[19] As a result, the bankruptcy court did not err in certifying the Class under Civil Rule § 23(b)(2).

Finally, certification under Civil Rule 23(b)(3) is appropriate when individualized damage claims are being sought. However, the Trustee admits that the only damages being sought

---

[19] However, absent some type of damages claim, the Trustee may be unable to recover attorneys' fees for prosecuting the Class Action because Civil Rule 23(h) limits an award of attorneys' fees to circumstances where such a recovery is authorized by law. Here, we have determined that the Class Action may not seek damages in the form of interest on the escheated funds and that the bankruptcy court lacks jurisdiction over Class members' stay violation claims.

are not individualized, but are limited to the costs and fees incurred in prosecuting the Class Action. Accordingly, Civil Rule 23(b)(3) is inapplicable to the Class Action.

In summary, we find that the bankruptcy court did not abuse its discretion in certifying the Class under Civil Rule 23(a) and Civil Rule 23(b)(2). However, the bankruptcy court did err in certifying the Class under Civil Rule 23(b)(1)(A) and (b)(3).

## VII. CONCLUSION

Based on the foregoing reasons, we determine that the claims for interest on escheated funds are barred by sovereign immunity. Under the holding of Katz, California has waived its sovereign immunity claims to the balance of the Claims. The bankruptcy court, however, lacks subject matter jurisdiction over the stay violation claims, which may only be pursued by civil contempt motions filed in each Class member's cases.

Additionally, we determine that the certification of the Class under Civil Rule 23(b)(1) was error. The Trustee has admitted that the Class Action does not seek individualized damages claims and, accordingly, certification of the Class under Civil Rule 23(b)(3) was also error. Although the bankruptcy court did not err in certifying the Class under Civil Rule 23(b)(2), as noted above, unless there is some federal or state law which authorizes recovery of attorneys' fees for the Claims, such fees are not recoverable under Civil Rule 23(h). Therefore, we REVERSE the Certification Order entry and remand the matter to the bankruptcy court to issue a certification order solely under Civil Rules 23(a) and (b)(2), and which narrows the

40

scope of the Class Action by eliminating claims for interest damages and claims for willful violation of the automatic stay.